Whitaker, Judge,
delivered the opinion of the court:
1. Plaintiff sustained a net loss in 1946. Under the Internal Revenue Code of 1939 it is entitled, under certain conditions, to carry back this loss to 1944 and 1945, and deduct it from its income for those years. In computing the loss in 1946 plaintiff claims it is entitled to take into account *871 additional excess profits taxes asserted by the Eevenue Agent to be due for the years 1942,1948 and 1944. It says it can take these additional taxes into account in 1946 because, prior thereto, it had contested liability for them, but, after extended discussion with the Eevenue Agent of the various items bringing about the additional taxes, and after seeing the Eevenue Agent’s report, it became convinced it owed the taxes the agent claimed it owed, and it consented thereto and agreed that they might be assessed and, indeed, paid the additional liability asserted. This agreement was in 1946. Since this was the first time the taxpayer had admitted liability for the additional taxes, plaintiff claims they accrued in that year.
We think the taxpayer is correct. A liability accrues when it is asserted and agreed to by the person against whom it is asserted. Indeed, the creditor does not need to assert the liability, if the debtor recognizes it and treats it as such. For instance, a taxpayer is required to make a return of his income, and to compute the- tax he thinks he owes. The amount of tax disclosed by the return accrues in the taxable year for which it is made.
This is true, although the Commissioner of Internal Eevenue may later determine that the amount shown to be due is not enough or is too much. It is true although the taxpayer may decide later that he has paid too much and files a claim for refund.
It is true because the taxpayer recognized the liability. The Commissioner’s concurrence therein was not necessary to accrue the liability for the amount recognized by the taxpayer.
If later the Commissioner asserts additional liability, which the taxpayer disputes in good faith, the additional liability does not accrue until the taxpayer finally consents to it; or, in the absence of consent, until it is authoritatively settled; but this does not prevent the accrual of a liability which the taxpayer recognizes and agrees to pay, as, for instance, the amount shown on the return.
This, we think, is in accord with the principle of United States v. Anderson, 269 U. S. 422, and, more particularly, of Dixie Pine Products Co. v. Commissioner, 320 U. S. 516, *872 and Security Flour Mills v. Commissioner, 321 U. S. 281 In the case last cited the Court at page 284 said:
It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting. Here the petitioner, in figuring its costs and its sales price to consumers, added the amount of the processing tax, but it collected its purchase price as such and designated no part of it as representing the tax. The petitioner received the purchase price as such. Its tax liability, if any, to the United States did not differ from other debts. Since it denied liability for, and failed to pay, the tax during the taxable year 1935, it was not in a position in its tax accounting to treat the Government’s claim as an accrued liability. * * *
It was the contest by the taxpayer that prevented accrual of the tax. So also in Dixie Pine Products Co., supra. When the taxpayer no longer contests, but admits liability, the tax then accrues.
In the case at bar, there was a genuine issue between the taxpayer and the Government’s representative over the amount due, if any, and months of discussions were had between them. Finally, on April 23, 1946, the Eevenue Agent came up with a definite figure and presented his computation to the taxpayer. The taxpayer consented to it and agreed that it might be assessed. This agreement was evidenced on form 874, promulgated by the Bureau of Internal Eevenue for this purpose. On the same day the amount agreed to was paid.
In our opinion, liability for this amount of tax accrued when plaintiff agreed that it was liable for the amount asserted to be due.
It is true the Commissioner of Internal Eevenue had not agreed to the amount computed by the Eevenue Agent; but, for the liability to accrue, it is not necessary for the Commissioner to agree, no more than was it necessary for the Commissioner to agree to the amount shown on its return for that amount to accrue. In Lewyt Corporation v. Commissioner, 349 U. S. 237, the Supreme Court held that the amount of the tax shown on the return was the amount that *873 accrued in the taxable year and not the amount finally determined to be due. The concurrence of the Commissioner of Internal Eevenue is not necessary; it is the recognition of the liability by the taxpayer that causes the accrual.
Nor does the later filing of a claim for refund by the taxpayer asking for accelerated depreciation prevent the amount previously agreed to and paid from having accrued. It asserted a claim against the Government to recover a part of the amount agreed to and paid, but this did not entitle the taxpayer to get back any of the money paid until the dispute was settled. The dispute was not settled until the following year. After the claim was filed a Eevenue Agent investigated it and allowed it in part, at least. He presented the taxpayer with form 873, on which the taxpayer could note its consent to the adjustment made. The taxpayer, presumably, signed this on December 2, 1946, but did not file it until January 17, 1947, and, hence, the dispute raised by the claim for refund was not settled before then.
Under our decision in Consolidated Edison Co. v. United States, 133 C. Cls. 376, cert. den. 351 U. S. 909, the filing of a claim for refund would not affect the accrual of the liability, since the liability was paid, and thereby discharged in the year it accrued. See also Chestnut Securities Co. v. United States, 104 C. Cls. 489.
We think plaintiff, in computing its loss for 1946, is entitled to take into account the additional liability asserted by the Eevenue Agent and agreed to by it and paid by it.
2. Defendant says that plaintiff is not entitled to add to its operating loss for 1946 the amount of the additional excess profits taxes for 1942, 1943 and 1944, liability for which it acknowledged in 1946, and which it paid in 1946, because in its claims for refund, asking that its operating loss for 1946 be carried back to prior years, it did not refer to the additional taxes for 1942,1943 and 1944.
This is an untenable position.
The claim filed on January 6,1947 asking for a refund of income taxes for the calendar year 1944 read:
The taxpayer claims a refund of 1944 normal tax and surtax as a result of a carry-back of 1946 net operating *874 loss, totalling $1,115,000, or such other amount as is proper * * *
The taxpayer did not undertake to indicate how he thought the 1946 net operating loss ought to be computed. He merely claimed a carry-back of the net operating loss in the amount of $1,115,000, “or such other amount as is proper.” This required the Commissioner of Internal Revenue to compute the “proper” amount of the 1946 operating loss. Since we have held above that the liability for the additional taxes for 1942,1948 and 1944 accrued in the year 1946, it was necessary for the Commissioner of Internal Revenue to take into account this additional liability in computing the net operating loss for 1946. It was not necessary for the taxpayer to specifically refer to additional taxes paid for 1942, 1943 and 1944.
The claim filed on January 6, 1947 for the calendar year 1945 was to the same effect.
Subsequently, the taxpayer filed other claims for refund of income and excess profits taxes for 1944 and 1945 based upon the carry-back of the net operating loss for 1946, and on other grounds, but in these claims also it asked for the refund of a stated amount or such other amount as was proper.
In any event, the claims filed on January 6,1947, put the Commissioner of Internal Revenue on notice of what the taxpayer was claiming, and made it necessary for him to make a computation of the proper amount of the loss for 1946, and this could only be done, in our opinion, by including therein the liability for additional taxes for the years 1942, 1943, and 1944.
On December 6, 1948 the taxpayer filed a further claim for refund of Federal income taxes for the calendar year 1944. In this one it made specific claim for the inclusion in its net operating loss for 1946 of the additional excess profits taxes consented to and paid for the years 1942, 1943, and 1944. However, on September 22, 1949, the taxpayer wrote the Commissioner agreeing to the disallowance of this claim. This, however, does not foreclose the taxpayer from asserting the claim it now makes in this suit, as the defendant in its brief admits. Just why the taxpayer agreed *875 that this claim should be disallowed, we do not know, but, at any rate, its claims of January 6, 1947 were still before the Commissioner of Internal Revenue, unacted upon, and these claims afford sufficient basis for the present suit.
8. The next issue raised by the pleadings is the computation of interest on the refunds to which plaintiff was entitled for the overpayment of excess profits taxes for 1944 and 1945. The plaintiff claims interest from January 6, 1947, the date it filed its claims for refund asking for the carry-back of its 1946 loss to the years 1944 and 1945. The Commissioner of Internal Revenue computed interest from May 6, 1947, the date plaintiff filed its return for 1946.
Section 3771 of the Internal Revenue Code provided for interest on an overpayment of internal revenue tax at the rate of 6 percent per annum from the date of the overpayment. Under subsection (e) of section 3771, as that subsection read prior to its amendment by the Tax Adjustment Act of 1945, it was provided that—
* * * no interest shall be allowed or paid with respect to such part of the overpayment [attributable to the carry-back of a net operating loss] for any period before the filing of a claim for credit or refund of such part of the overpayment * * *.
The general provision of section 3771 was that interest was allowable on an overpayment “from the date of the overpaymentbut, with respect to an overpayment attributable to the carry-back of a net operating loss for a subsequent year, subsection (e) excluded the period from the date of the overpayment to the date of the filing of a claim for refund. But under the law as it then was, there is no doubt that plaintiff was entitled to interest from the date of the filing of the claim for refund. We so held in Virginia Electric & Power Co. v. United States, 130 C. Cls. 189.
The Tax Adjustment Act of 1945 (59 Stat. 517) amended subsection (e) of section 3771 so as to add the following:
* * * nor for any period beginning with the date_ of filing of an application under section 3780 (a) relating to such part of the overpayment and ending with the last date the Commissioner’s determination is required to be made under section 3780 (b); nor, in case an application is made under section 3780 (a), for any *876 period, before the first day of tbe month immediately following the month in which falls the last date prescribed by law * * * for filing the return for the taxable year of the net operating loss or unused excess profits credit, or before the date on which the return is filed, whichever is later.
Section 3780 (a), to which the amendment refers, allowed a taxpayer to “file an application for a tentative carry-back adjustment of the taxes for prior taxable years affected by a net operating loss carry-back.” [Italics ours.] Section 3780 (b) required the Commissioner of Internal Eevenue, within 90 days from the filing of such an application, or, roughly, within 90 days from the filing of the return for the year the net operating loss was sustained, to make “a limited examination of the application, to discover omissions and errors of computation therein, and * * * [to] determine the amount of the increase or decrease in each tax attributable to such carry-back upon the basis of the application and the examination * * [Italics ours.]
It seems clear that the claims for refund filed by the plaintiff on January 6, 1947 were not applications under section 3780. In that claim it did not ask for a “tentative” carry-back to prior years. They were unqualified claims for refund of all taxes overpaid for the years 1944 and 1945. It contemplated detailed examination and allowance of, not a tentative carry-back, but all the carry-back to which the taxpayer was entitled under the law.
Since no application was made by the plaintiff for a tentative carry-back adjustment, under section 3780, the provisions of section 3771 (e) relating to the computation of interest on an overpayment, where an application is made for tentative carry-back adjustment under section 3780, has no application.
This takes us back to the statute as it was before the amendment was made by the Tax Adjustment Act of 1945. The statute then provided for interest on an overpayment from the date the claim for refund was filed.
Now, it is said that the defendant was not in position to determine the net operating loss carry-back until after plaintiff had filed its return, and that, therefore, the Government *877 should not be penalized by having to pay interest prior to the date the return was filed. But the law does not refer to the date of the filing of a return; it refers only to the date of the filing of a claim for refund, and does not prohibit its filing before the return is filed.
From the last day of the year in which the plaintiff had sustained a net operating loss, the Government had more of plaintiff’s money than it was entitled to, and on this date plaintiff became entitled to carry it back to a prior year and thus reduce its taxes for that year; hence, it should pay interest from that date. But the statute excepts therefrom the period between the date of the overpayment and the date the claim for refund was filed, and plaintiff only claims a refund from the date the claim for refund was filed. This we think it is entitled to.
4. Defendant concedes that plaintiff is entitled to interest on the overpayment of excess profits taxes for 1944 and 1945 from the date of the overpayment to the date of the assessment of the deficiency.
Plaintiff is entitled to recover in accordance with the foregoing opinion. Judgment will be entered to this effect. The amount of recovery will be determined under Buie 38 (c).
It is so ordered.
Laramore, Judge; MaddeN, Judge; LittletoN, Judge; and JoNes, Chief Judge, concur.
BINDINGS OP PACT
The court, having considered the evidence, the report of Commissioner Wilson Cowen, and the briefs and argument of counsel, makes the following findings of fact:
1. The plaintiff is a Connecticut corporation, having its principal office in New Britain, Connecticut.
2. On or before May 15, 1945, after an extension of time for filing, the plaintiff filed its corporate income tax return for the calendar year 1944, reporting thereon an adjusted normal tax net income of $2,465,714.05 and after adjustment for excess profits tax net income of $1,351,560.71 and a dividend receipt credit of $40,159.10, the net taxable income was *878 $1,073,994.24. The return reported a combined normal tax and surtax liability of $432,777.12, which the plaintiff paid in quarterly installments during the year 1945.
3. On or before May 15, 1945, after an extension of time for filing, the plaintiff also filed its corporate excess profits tax return for the calendar year 1944 reporting thereon adjusted excess profits tax net income of $1,351,560.71 and an excess profits tax liability of $1,283,982.67. On July 20, 1945, plaintiff was notified of the allowance of the credit of $572,214.45 under Section 3806 (b) of the Internal Revenue Code of 1939 resulting from renegotiation of war contracts. The excess profits tax liability was, on October 26, 1945, further reduced $128,398.27 for the 10 percent credit provided by Section 784 (a) of the Internal Revenue Code of 1939 as added by the Tax Adjustment Act of 1945, thus leaving $583,389.95 as the plaintiff’s excess profits tax liability. Plaintiff paid $640,591.40 as excess profits tax in installments during the year 1945. The excess payment of $57,221.45 over the determined excess profits tax liability was transferred by the Collector of Internal Revenue to his 9d suspense account
4. After an examination of the plaintiff’s books and records, the revenue agent, in a report dated April 24, 1946, after making numerous adjustments to taxable income, proposed overassessments and deficiencies after renegotiation of war contracts as follows:

In determining the proposed deficiency in excess profits tax for the year 1944, the revenue agent used the amount actually paid by the plaintiff on the basis that the credit allowed for renegotiation of war contracts was overstated by the sum of $57,221.45.
*879 5. The agent’s examination of plaintiff’s returns extended over a period of several months, during which there were numerous discussions between plaintiff’s representatives and the agent with respect to deductions from income which he proposed to disallow. Many of the items were in dispute between the parties, and the additional excess profits taxes which the agent proposed for the years 1942,1948, and 1944, were not accrued on plaintiff’s books. All of the discussions were preliminary to the preparation of the examining agent’s report which was dated April 24,1946, but plaintiff did not receive definite information of the agent’s adjustments to taxable income, as reported in plaintiff’s corporation income and excess profits tax returns for the years 1942, 1943, and 1944, until the Internal Revenue Agent in Charge at New Haven, Connecticut, mailed plaintiff a copy of the agent’s report on April 10, 1947. However, on or about April 23, 1946, the examining agent furnished plaintiff with a preliminary list of the items he proposed to disallow. The un-allowable deductions, additional income, non-taxable income, and additional deductions as set forth in the agent’s report of April 24,1946.
On or about April 23,1946, plaintiff agreed to accept the adjustments in its taxable income for 1942, 1943, and 1944, as proposed by the agent in the preliminary list furnished to plaintiff. Plaintiff had generally followed the practice of making entries on its books showing additional tax liabilities which examining agents of the Internal Revenue Service proposed to make, but the record here does not establish whether or not plaintiff used the preliminary list furnished by the agent for the purpose of entering the additional tax liabilities on its books in April 1946 and prior to the time it received the formal report on April 10,1947.
6. On April 23, 1946, plaintiff executed and mailed to the revenue agent Form 874, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment covering the deficiencies and overassessments for the years 1942,1943, and 1944 as proposed by the examining agent. The waiver, as stated thereon, was for the purpose of preventing a further accumulation of interest. The *880 form was received by the Bevenue Agent in Charge, New Haven, Connecticut, under date of April 26,1946. By letter addressed to the Collector of Internal Bevenue at Hartford, Connecticut, on April 23,1946, and received by him on April 24, 1946, plaintiff forwarded a check in the amount of $138,684.81 in payment of the additional taxes and interest. Plaintiff’s letter read as follows:

April 83,19Jj8.

Collector oe Internal Bevenue,

Hartford, Oonneetimt.

In re Landers, Frary & Clark,
New Britain, Conn.
Dear Sir: We have today forwarded to C. F. Korn, Internal Bevenue Agent, P. O. Box 1439, Hartford, Connecticut, signed Form 874, agreeing to immediate assessment of net additional taxes for the years 1942, 1943 and 1944 in the amount of $129,654.36. Details are shown on the schedule submitted with this letter.
We are enclosing check for $138,684.81 in payment of tax and interest, as follows:

Very truly yours,
Landers, Frarx & Clark,

Treasurer.

FLDabney; m

*881

*882 The collector not having any assessed tax liability or interest against which to apply the payment entered the sum of $138,684.81 in his 9d suspense account.
7. The check which plaintiff forwarded to the collector with the letter of April 23, 1946, was prepared by plaintiff on the basis of the preliminary memorandum of disallowances furnished by the examining agent, and the interest computations shown in the letter were made by plaintiff’s tax counsel. The examining agent’s determination of plaintiff’s taxable income and tax liability for the years 1942,1943, and 1944 did not become final until the agent’s report was approved and mailed to the plaintiff under date of April 10, 1947.
8. While the revenue agent’s report of April 24,1946, was under consideration for approval by the Commissioner of Internal Bevenue, the plaintiff on June 14,1946, filed claims for refund for the years 1942,1943, and 1944 based upon the assertion of an additional deduction in each year for accelerated amortization of emergency war facilities. By reason of these claimed additional deductions from income, a reexamination was made of the plaintiff’s books and records and, in a report dated December 5, 1946, the revenue agent reduced his previously proposed income tax and declared value excess profits tax and also his previously proposed excess profits tax for each of the years 1942, 1943, and 1944. On December 2, 1946, plaintiff executed and on January 17, 1947, filed Form 873 accepting the proposed reduction in tax liability for these years.
9. After thorough consideration of the revenue agent’s reports of April 24,1946, and December 5, 1946, the Internal Bevenue Agent in Charge, by letters dated April 10, 1947, forwarded copies of the reports to plaintiff. Inasmuch as the plaintiff had filed the waiver forms referred to, the letters of April 10,1947, stated that after the overassessments were certified to the collector by the Commissioner of Internal Bevenue, a bill would be presented for the amount which would be due for remittance to the collector. Thereafter, under date of May 6, 1947, the Commissioner of Internal Bevenue, within the extended limitation period, timely assessed against plaintiff the finally determined deficiencies in excess profits tax which were satisfied as follows:
*883 1942

10% post Assessment war credit Net amount

Tax_$20,085. 06 $2, 008. 51 $18, 076. 55
Interest_ 3,802. 68 _ 3,802.68
The above liability was satisfied in June 1947, by overpayment credits totaling $3,657.78 and a transfer of $18,-221.45 ont of the collector’s 9d suspense account.
1943

10% post Assessment war credit Net amount

Tax_$12,647. 37 $1,264.74 $11,382.63
Interest_ 1, 635. 67 _ 1, 635. 67
The above liability was satisfied in June 1947, by transfer of $13,018.30 out of the collector’s 9d suspense account.
1944

Assessment

Tax_$150,513.32
Interest_ 12,273. 80
The above liability was satisfied in June 1947, by the transfer out of the collector’s 9d suspense account of the $57,221.45 paid by plaintiff on December 15, 1945, and the further amount of $105,565.67. Thereafter the deficiency interest assessed for the year 1944 was reduced to $6,202 and the excess of $6,071.80 was refunded to the plaintiff.
10. On May 6, 1947, after an extension of time for filing, plaintiff filed its corporate income tax return for the calendar year 1946, reporting thereon a net operating loss of $962,-553.73. After an examination of the plaintiff’s books and records, the revenue agent, in a report dated September 12, 1949, which was forwarded to plaintiff under date of November 9, 1949, computed a net operating loss for the year 1946 in the amount of $815,901.38 which was carried back and allowed as a deduction from the plaintiff’s income for the year 1944. By reason of this allowance, together with a net adjustment in invested capital and the carryback of unused 1946 excess profits tax credit, the revenue agent determined that there was no excess profits tax liability for the year 1944 and proposed a refund of $733,883.27, the entire excess profits tax previously paid by plaintiff for such year 1944. The elimination of the entire excess profits tax liability resulted in the determination of a deficiency of $16,976.66 in income *884 tax for such year 1944. In the determination, the revenue agent increased plaintiff’s invested capital for the year 1944 by a net adjustment of $135,453.64 which would have produced an overpayment of excess profits tax of $5,790.64 before allowing the net operating loss deduction and the unused excess profits tax credit carryback from the year 1946. Upon consideration of the revenue agent’s report, it was determined that since plaintiff had not filed a claim for refund for the increase in invested capital, the overpayment of 1944 excess profits tax was $728,092.63 and the resulting deficiency in income tax was $14,267.58 which was assessed on March 31, 1950, together with interest of $2,391.67. The overassessment of $728,092.63 excess profits tax was scheduled for refund of which $16,659.25 was applied as a credit against the deficiency and interest assessed for the year 1944 and the balance of $711,433.38, together with interest thereon of $139,385.97 was refunded to plaintiff by check dated August 7, 1950. After consideration of a claim for refund filed by the plaintiff, the Commissioner of Internal Eevenue determined an overpayment of $5,790.64 of excess profits tax for the year 1944 and a resulting deficiency in income tax of $2,709.08 which was assessed on November 9, 1951, together with interest thereon of $748.11. The overpayment of excess profits tax was scheduled for refund and $3,457.19 was applied as a credit against the deficiency in income tax and interest thereon for the year 1944 and the balance thereof of $2,805.65, together with interest thereon of $1,672.36 was refunded to plaintiff on November 14, 1951.
11. After consideration of plaintiff’s claim for refund of excess profits tax filed May 6, 1947, based upon portal-to-portal pay suit and other claimed overstatement of income, the Commissioner of Internal Eevenue determined an overpayment of $690.73 tax and interest paid for the year 1943 which was reduced by postwar credit to $624.36. This produced a resulting deficiency in income tax of $294.97 which was assessed on December 2, 1949, together with interest thereon of $96.11. The Commissioner of Internal Eevenue credited $391.08 of the excess profits tax overpayment against the deficiency in income tax and interest and refunded the balance of $233.28, together with interest thereon of $130.71.
*885 12. On January 6,1947, May 6,1947, and August 12,1947, plaintiff filed claims for refund of excess profits tax for the year 1944 grounded upon the claim of a carryback to the year 1944 of an operating loss for the year 1946 and the unused excess profits tax credit for such year. None of these three claims for refund requested an increase in the net operating loss for the year 1946 for the asserted payments of excess profits tax by plaintiff to the collector during the year 1946. The Commissioner of Internal Revenue allowed these three claims for refund in the amounts as stated in finding 10.
13. On January 6,1947, May 6,1947, and August 12,1947, plaintiff filed claims for refund of income tax for the year 1944 based upon the ground of a carryback of an operating loss for the year 1946 but did not assert in the claims that the loss should be increased for the asserted payments of excess profits tax by plaintiff to the collector during the year 1946. Plaintiff was notified of the disallowance of these refund claims by letter dated June 25, 1951. On December 6,1948, plaintiff filed another claim for refund for the year 1944 in the amount of $59,714.85 grounded upon a claimed deduction for a carryback of a net operating loss from the year 1946 and in connection therewith stated:
In 1946, the taxpayer paid additional excess profits taxes for the calendar years 1942,1943, and 1944 amounting to $130,546.65 computed as follows:

This deduction of $130,546.65 is claimed in addition to the net operating loss deduction for income tax purposes as set forth in the claim filed on or about April 30, 1947.
Under date of September 22,1949, plaintiff filed with the Internal Revenue Agent in Charge the following stated agreement:
*886 With reference to claim for refund of income taxes for year 1944, filed under date of December 6, 1948, the undersigned agrees to the disallowance of the claim as set forth in the report of Revenue Agent C. F. Korn.
The revenue agent’s report referred to in the agreement was that of September 12, 1949, which was forwarded to plaintiff under date of November 9, 1949, as stated in finding 10. Pursuant to the agreement, the Commissioner of Internal Revenue thereafter listed the disallowance of this refund claim. On July 21, 1952, and July 25, 1952, plaintiff filed further claims for the refund of income taxes paid for the year 1944, of which copies are attached to the stipulation as exhibits 2 and 3. Final action on these two refund claims has not as yet been taken by the Commissioner of Internal Revenue. The additional excess profits taxes for the years 1942,1943, and 1944 finally determined payable after allowance of postwar credit and refund of $579.31 in the year 1949 for the year 1943 but before the carryback of the net operating loss for the year 1946, are as follows:

Year Net amount

1942_ 1943_ 1944_ $18,076.55 10,785.32 93,291. 87
Total_ 122,153. 74
14. Pursuant to a letter dated October 2, 1951, from the General Services Administration to the Commissioner of Internal Revenue disclosing a gross renegotiation rebate to the plaintiff of $3,436.54 for the year 1944, plaintiff’s taxable income for such year was increased by that amount. As a result, plaintiff’s income tax for the year 1944 was increased from $447,899.40, the amount previously determined, to $449,274.01, or an increase of $1,374.61. Since this amount of tax had been withheld from the rebate, plaintiff was given credit for this sum against the additional tax due from the inclusion of the rebate in taxable income and as a result thereof, no demand for payment was made by the collector for the said sum of $1,374.61.
15. In determining the interest payable on overpayments of excess profits taxes for the years 1943, 1944, and 1945, which were applied as a credit against deficiencies in income *887 tax, the Commissioner of Internal Kevenue computed interest from the date of the overpayment to the date interest ceased to accrue on the deficiencies. A computation of interest from the date of the overpayments of excess profits taxes resulting from the carryback of the net operating loss for the year 1946 to the date of the assessment of deficiencies in income tax resulting from such overpayments discloses additional interest as follows:

*888 In the claim for refund filed by plaintiff for the years 1943, 1944, and 1945, no claim was made for the payment of additional interest from the date of overpayment of the excess profits tax to the date of assessment of deficiencies in income tax resulting from such overpayments as now claimed.
16. Under date of May 14,1946, plaintiff filed its corporate income and declared value excess profits tax return and also its excess profits tax return for the calendar year 1945. It reported thereon an excess profits tax liability of $1,565,-899.21 for such year. After renegotiation of war contracts, plaintiff received a credit of $1,109,934.61 under Section 3806 (b) of the Internal Eevenue Code of 1939, thus leaving an excess profits tax liability of $455,964.60 which was paid during the year 1946. On January 6,1947, plaintiff filed a claim for refund in the amount of $802,726.61 for the year 1945 grounded upon the claim for unused excess profits tax credit from the year 1946 which was in excess of that applied to reduce 1944 excess profits tax income. On August 25, 1947, plaintiff filed another claim for refund of excess profits tax in the amount of $455,964.60 for the year 1945 and as a basis therefor claimed the unused excess profits tax credit from the year 1946 which was unnecessary to eliminate all of the 1944 excess profits tax income. After consideration, the Commissioner of Internal Eevenue allowed the refund claims in the amount of $455,964.60 and credited $294,266.84 of the 1945 overpayment of excess profits tax against an assessed deficiency in income tax and interest thereon for the year 1945 resulting from the determined overpayment of excess profits tax and refunded to plaintiff the balance of $161,697.76, together with interest thereon of $74,671.47. The Commissioner of Internal Eevenue computed interest on the overpayment from May 6,1947, the date plaintiff filed its Federal tax return for the year 1946 which reported the net operating loss, instead of January 6, 1947, the date it filed its first claim for refund for the year 1945.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of *889 law that plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38 (c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due plaintiff, it was ordered June 5,1957, that judgment for the plaintiff be entered for $81,372, with interest, as provided by law, on $52,218.65 from December 3,1948, and with interest, as provided by law, on $3,139.78, from July 21,1952.