**H. B. ZACHRY COMPANY**

v.

**UNITED STATES.**

No. 169–56.

United States Court of Claims.
Dec. 3, 1958.

Whitaker, J., dissented.

Robert J. Bird, Washington, D. C., for plaintiff. Chester H. Johnson, San Antonio, Tex., and Thomas C. Thompson, Jr., Washington, D. C., on the briefs.

John A. Rees, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice for defendant. James P. Garland, David A. Wilson, Jr., and H. S. Fessenden, Washington, D. C., on the brief.

MADDEN, Judge.

This is a suit to recover income and excess profits taxes for the year 1943. The petition also contains alternative claims which we do not find it necessary to consider. The troublesome question in this case is whether certain refund claims filed by the plaintiff were adequate foundations for its present suit.

The plaintiff kept its accounts and filed its tax returns on a calendar year basis, and used the accrual method of accounting. Its returns for 1941, 1942 and 1943 were audited by the taxing authorities in 1945. The examining agent raised many issues and proposed the assessment of many deficiencies, to which the plaintiff objected. The principal subject of controversy was the rate of depreciation which the plaintiff had used in its returns. Agreement was reached in the autumn of 1945 and the plaintiff executed and filed a Form 874 wherein it agreed to the assessment of excess profits tax deficiencies in the amount of $5,639.13 for 1941, and $283,046.24 for 1943, with appropriate interest. Form 874 was executed by the plaintiff and mailed to the examining agent on December 11, 1945. The accrual of the taxes shown by this agreement was recorded in the plaintiff's accounts in 1945.

Section 122(d) (6) of the Internal Revenue Code of 1939 [1] provided that a taxpayer, in computing its excess profits income for a given year, could deduct excess profits taxes "paid or accrued" during that year. The Supreme Court of the United States in the cases of United States v. Olympic Radio and Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024, reversing 108 F.Supp. 109, 124 Ct.Cl. 33, and Lewyt Corp. v. Commissioner, 349 U.S. 237, 75 S.Ct. 736, 99 L. Ed. 1029, held on May 23, 1955, that an accrual basis taxpayer such as the plaintiff may take the section 122(d) (6) deduction only in the year in which it accrued the tax which it desires to deduct, and not in the year in which it paid it. The plaintiff says that it accrued the 1941 and 1943 excess profits tax deficiencies in 1945 when it agreed to them and charged them on its books. The Government, not very vigorously, denies this. It says there was no dispute about these taxes. There was, however, a very vigorous dispute which was ironed out only after lengthy negotiations. See Landers, Frary & Clark v. United States, 149 F. Supp. 202, 137 Ct.Cl. 870; Rev.Rule 57–105, C.B. 1957–1, 193.

The plaintiff was, then, entitled to deduct the excess profits taxes, accrued on its books in 1945, from its 1945 income.

---

1. All references herein are to the Internal Revenue Code of 1939, 26 U.S.C.A.

That gave it a net operating loss for 1945. Under section 122(b) (1) the plaintiff was entitled to carry that 1945 net operating loss to the second preceding taxable year, which was 1943. That meant that it had overpaid its taxes for 1943 and was entitled to a refund, if it took the necessary steps, within the prescribed time, to obtain the refund.

The plaintiff did not file a claim for refund until June 29, 1953. To one unlearned in the mysteries of excess profits tax proceedings, it would seem that the claim was filed too late. But the plaintiff had executed valid consents extending until June 30, 1953, the time within which the Commissioner of Internal Revenue could assess tax deficiencies for the years 1944, 1945, 1946, and 1947. These consents not only kept those years open for claims for refund, but also kept open any other years to which net operating losses from those years could be carried back. See section 322(b) (6).

The plaintiff on June 29, 1953, the day before the waiver period expired, filed claims for refund for the years 1942, 1943, and 1944. The claim for 1943 was based upon the fact that the plaintiff in 1944 had paid excess profits taxes, presumably those which it had shown on its return for 1943; that it was entitled to deduct from its 1944 income these taxes paid in 1944; that with that deduction there was a net operating loss for 1944 which could be carried back, first to 1942, and the part of it not used up for 1942 could be carried forward to 1943. The plaintiff, in preparing these claims for refund, relied upon this court's decision in Olympic Radio, supra, to the effect that even an accrual basis taxpayer could take the excess profits tax deduction in the year in which the tax was paid, even though it had been accrued in another year.

As we have said, the plaintiff's claim for refund for 1943 was filed on June 29, 1953. On May 23, 1955, the Supreme Court reversed our Olympic Radio decision. It followed that the 1943 taxes shown on the 1943 return and paid in 1944 could be taken as a deduction only in 1943, the year in which they were accrued on the plaintiff's books. But the year 1943 had long since been closed for claims for refund, except, as we have seen, for overpayments resulting from carry-backs to 1943 from a subsequent year which was still open. When, on June 29, 1943, the plaintiff had filed its claim for refund, the year 1945 was still open because of the waiver. But by the time of the Supreme Court's decision in Olympic Radio, that year was closed. On December 12, 1955, the plaintiff filed what it called an amended and supplemental claim for refund for 1943, based upon a carry-back of a net operating loss from 1945, the loss having resulted from the deduction which the plaintiff was entitled to take in 1945 for the 1943 deficiencies agreed to and accrued on its books in that year. The December 12, 1955, date of the filing of this claim was, of course, not within three years of the filing of the return, nor within two years of the payment of the tax, nor within the prescribed period relating to consents to assessments. See section 322(b) (1) and (3). Since the 1955 claim was untimely, the plaintiff relies upon its original claim of June 29, 1953, and, alternatively, upon that claim as, the plaintiff claims, effectively amended in 1955.

The plaintiff's 1953 claim covering the years 1942, 1943, and 1944 said, in its first two paragraphs:

"This claim is filed for the purpose of protecting the rights of the taxpayer under Section 122(d) (6) of the Internal Revenue Code prior to the tolling of the statute as provided by Section 322(b) (3) of the Internal Revenue Code."

In determining the amount of net operating loss deduction, Section 122(d) (6) reads in part as follows:

"There shall be allowed as a deduction the amount of tax imposed by Subchapter E of Chapter 2 paid or accrued within the taxable year, subject to the following rules:"

If the plaintiff's claim had stopped with these generalities, it would, unless and until rejected by the Commissioner of

Internal Revenue for lack of specificity, have been amendable in the way in which the plaintiff sought to amend it in 1955. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 71, 53 S.Ct. 278, 77 L.Ed. 619. However, the plaintiff, in its 1953 claim, went on to explain that it was relying on this court's decision in Olympic Radio, supra, and was claiming, as we have seen, a 1943 loss resulting from a deduction of excess profits taxes paid in 1944 producing an operating loss in that year, carried back to 1943.

The plaintiff's 1953 claim was considered by an Internal Revenue agent who recommended that it be disallowed on the basis of the Tax Court's decision in Lewyt, 18 T.C. 1245, contrary to this court's decision in Olympic Radio. The controversy then went to the Appellate Division of the Regional Commissioner's Office. The Commissioner's representative suggested that since Lewyt and Olympic Radio were both then pending before the Supreme Court, discussion of the claims should be postponed. The plaintiff agreed and the discussion was postponed. Next came the Supreme Court's decisions in the two cases. Then the plaintiff filed an amended claim for 1944 based upon the mistaken view that the 1943 deficiencies had been accrued in 1946. Then the plaintiff discovered its mistake and filed the December 12, 1955 "amended and supplemental" claim for 1943.

There are serious discrepancies between what the plaintiff claimed in its 1953 claim, and what it seeks to recover in this suit. It is, in fact, not the same money. The money that was paid in 1944, causing an asserted operating loss and a carry-back to 1943, which was the subject of the 1953 claim, was a wholly different item from the deficiency agreed to and accrued in 1945, and carried back to 1943, which is the subject of this suit.

The plaintiff says that in auditing its original 1953 claim the Commissioner would have been obliged to take into account not only the year 1943 but the two preceding and the two following years, because of the carry-over and carry-back provisions. It points to section 23(s), and to 122(c) which provides that:

"The amount of the net operating loss deduction shall be the aggregate of the net operating loss carry-overs and net operating loss carry-backs to the taxable year * * *."

It points to Income Tax Regs. 111, paragraph 29.122–1(b) prescribing "steps in computation of net operating loss" which require the consideration of the carry-overs and carry-backs, as well as the experience of the taxable year itself.

We seriously doubt whether, in considering the plaintiff's 1953 claim, the taxing authorities could have been expected to discover that the plaintiff had a different and better claim than the one which it specified. The fact that the plaintiff had accrued the agreed 1943 deficiencies in 1945 would not have been disclosed on the returns for any of the five relevant years.

With considerable hesitation, we conclude that the plaintiff's claim for refund, at least as amended, was, in the circumstances, sufficient to lay a foundation for this suit. The law on the subject of the excess profits tax deduction was unclear. The plaintiff relied upon this court's decision in Olympic Radio. The Commissioner naturally preferred the Tax Court's contrary decision in Lewyt. The plaintiff would have done better for itself if it had analyzed its situation more carefully and had filed alternative claims covering both legal theories. However, the plaintiff did timely claim a section 122(d)(6) deduction, which is what it is here suing for, the parties postponed decision on its claim until the Supreme Court should clarify the law, the plaintiff after the Supreme Court's decision and while the claim was still under consideration, amended its claim and based it upon the theory on which this suit is based. The Government was not in any sense prejudiced by the plaintiff's change of its theory to bring it into accord with the Supreme Court's decision.

This court in recent decisions in National Forge and Ordnance Company v. United States, 151 F.Supp. 937, 139 Ct.Cl. 222 (decided July 17, 1957), and Continental Foundry & Machine Company v. United States, Ct.Cl., 159 F.Supp. 608 (decided March 5, 1958), has dealt with comparable problems and has held that the rule of *strictissimi juris* is not applicable to taxpayers' claims for refund. We apply that doctrine here and conclude that the plaintiff, as a matter of law is entitled to recover. Further proceedings under Rule 38(c), 28 U.S.C.A. will be required to determine the amount of the judgment.

It is so ordered.

JONES, Chief Judge, and McLAUGHLIN, District Judge, sitting by designation, concur.

WHITAKER, Judge, dissenting:

I am compelled to disagree.

The 1953 refund was based on a carry-back to 1943 of a loss incurred in 1944 as the result of the deduction of the payment in that year of excess profits taxes for 1943. I agree that that claim put the Commissioner on notice that the taxpayer was seeking a deduction of the excess profits taxes for 1943, and the Commissioner should have allowed their deduction in the proper year, even though the taxpayer had claimed the deduction in the wrong year. The correct year was 1943, but, of course, the deduction in that year is pointless, as we said in Olympic Radio and Television, Inc., v. United States, 108 F.Supp. 109, 124 Ct.Cl. 33.[1]

Now the so-called amended claim for refund of December 12, 1955 has no relation at all to the deduction of the excess profits tax for 1943, or the carry-back of a 1944 loss.

The only similarity between the original claim and the amended claim is that both relate to carry-back of losses; but, of losses occasioned by entirely different causes and for different years. The original claim was for the carry-back of a loss for *1944,* occasioned by the payment of excess profits taxes for 1943. The amended claim was for the carry-back of a loss for *1945,* occasioned not by the payment of excess profits taxes for any year, but by the taxpayer's agreement in that year to deficiencies previously asserted by the Commissioner for the years 1941 and 1943, arising from causes having no relation to the payment of excess profits taxes.

The two claims seem to me to have no relation one to the other. If they do not, one cannot be an amendment of the other.

---

1. While the claim was for the carry-back of a loss, it was a loss occasioned by the deduction of the excess profits tax for 1943.