LOCKHEED MARTIN CORPORATION, as Successor to Martin Marietta Corporation and Martin Marietta Technologies, Inc., and Affiliated Corporations, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–161T.

United States Court of Federal Claims.

Sept. 25, 1997.

198

William F. Nelson, King & Spalding, Atlanta, GA, for plaintiffs.

Stuart Joel Bassin, U.S. Dept. of Justice, Tax Div., Claims Court, Washington, DC, for defendant.

*Opinion and Order* [1]

WEINSTEIN, Judge.

Plaintiff has moved for an order clarifying the scope of the complaint. The complaint seeks a refund of almost sixty-four million

---

**1.** This opinion and order originally was filed on August 5, 1997. It is being reissued for publication, at the government's request, with minor revisions not affecting the substance of the decision.

dollars. Specifically, plaintiff asks the court to hold that it may seek a qualified research expenditure ("QRE") tax credit for certain research expenses of a LANTIRN prototype test unit program (amounting to ten million dollars) that were not discovered until the government initiated intensive, on-site, expert-aided discovery with respect to the LANTIRN contract. *See* Pl. Mot. at 1–2; Def. Opp. at 1. These particular classes of expenditures were not specifically presented to the Internal Revenue Service (IRS) in plaintiff's refund claims, but allegedly are of the same type as other research expenses, under the LANTIRN and other contracts, presented to and disallowed by the Service. Indeed, plaintiff would like the court to rule that *any* evidence that is uncovered "as a result of the discovery process" may be offered to prove (even increase) the amount and establish the qualification of any expenditures under any of plaintiff's 300–plus contracts with the government during the years at issue (1982 through 1988) as QRE. Pl. Mot. at 2–3.

The court deems plaintiff's "motion to clarify" to be a motion to amend the complaint to add these claims. Although Rule 15(a) of the Rules of the Court of Federal Claims (RCFC) provides that "leave [to amend] shall be freely given," a court may deny a motion to amend a complaint if the amendment would be futile, because, for example, the claims added by the amendment could not withstand a motion to dismiss. *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988) (discussing identical F.R.C.P. 15(a) and affirming district court's denial of motion to amend where proposed amendment would have alleged a claim that was barred by the applicable statute of limitations).

The specific question before the court, therefore, is whether these claims are barred by the statute of limitations for refund claims for these years. Defendant has moved to dismiss such claims. The court denies plaintiff's motion, based on the statutory bar, and thus also denies, as moot, defendant's motion to dismiss these claims.

*Background*

The facts are basically not in dispute. In any event, they are viewed, for purposes of this order, in the light most favorable to plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

Plaintiff timely filed administrative refund claims for $63,792,209, in 1991, claiming tax credits for certain "qualified research expenses" ("QRE") consisting of wages and research expenses in connection with over 300 fixed-price contracts with the government or governmental entities. *See* Internal Revenue Code (I.R.C.) § 41.[2] The refund amounts requested were not broken down by type of expense or identified with any particular contract(s) in the amended returns, which merely set out the revised total "Research Credit per Form 6765" and "Investment Tax Credit Recapture." The returns stated that the credit for "increasing research activities" was increased to reflect:

(1) research expenses incurred by Taxpayer pursuant to fixed price contracts with customers where Taxpayer's right to payment under such contracts is contingent upon the success of the research [See IRS Reg. Sec. 1.41–5(d)(1) ]; and (2) additional qualifying wages for holiday pay, vacation pay, sick pay, military leave and jury duty that were inadvertently not included as part of the W–2 wages of persons performing qualified research.

Goldstein Aff. Exhs. A–F (Amended returns for tax years 1982 through 1988).

The IRS issued a Technical Advice Memorandum (TAM), on November 30, 1993, which based its denial of the claims on the conclusion that the research was ineligible for the tax credit because it was "funded" by the contracts to which it related. *See* I.R.C. of 1954, § 44F; I.R.C. of 1986, § 41(d)(4)(H). The TAM's conclusion that the research was "funded" was based on the IRS's determination that (1) the payment by the government for plaintiff's research expenses was not contingent on the success of the research, and

---

**2.** Unless otherwise stated, references to sections of the I.R.C. and Treasury Regulations are to the version in effect at the relevant time, as codified at 26 U.S.C. and 26 C.F.R., respectively.

that (2) plaintiff did not retain "substantial rights" in the research. *See* Treas. Reg. § 1.41–5(d).

During the course of the Service's examination of the claims, plaintiff produced computer-generated schedules ("Initial Summaries" or "Green Books") of specific expenditures incurred under the thirteen largest contracts subject to the refund claims, representing approximately 80% of plaintiff's research and development costs. A "sampling approach" was used by the agents to examine the refund claims, according to plaintiff, rather than the "top-down detailed inquiry" (focussing on expenditures incurred with respect to the four largest contracts) now being used by the government in discovery in this case.

A Revenue Agent's Report ("RAR") signed in November 1994, following the examination, concluded that plaintiff would be entitled to an additional credit of approximately $49.5 million if it prevailed on the funding and substantial rights issues. (Two other classes of expenditures were disallowed by the RAR: subcontractor costs, and expenses associated with service contracts.)

Defendant maintains that such statements by service auditors, who are not authorized to bind the government, have no legal consequences. Defendant also maintains that plaintiff must establish each and every fact required to establish its entitlement to the credits it seeks, even if such factual grounds for disallowing the claims were not raised during the audit, and even if some of such facts were presented to and accepted during the audit. Some of these facts related to whether plaintiff's expenditures were for "qualified research," rather than for ineligible purposes such as routine testing or overhead. Other fact-intensive issues, according to defendant, involve whether portions of the claimed expenditures do not qualify for QRE because they were incurred "after the beginning of commercial production" under section 41(d)(4)(A), or because they relate to "adaption of an existing business component to a particular customer's requirement or need," under section 41(d)(4)(B).

The Service notified plaintiff that it was disallowing plaintiff's claims in a letter dated April 14, 1995. The letter stated the reasons for disallowance as: "[t]he research credit is not allowed because the research was funded and the taxpayer did not retain substantial rights in the research. See Treas. Regulation § 1.41–5(d)." Plaintiff filed suit in this court, for the same total amount as claimed for refund, on March 21, 1996.

During discovery, plaintiff learned of over ten million dollars in additional QRE credits associated with expenses it allegedly incurred under the LANTIRN program, which were not included in the Initial Summaries or otherwise identified during the audit of the refund claims. Its motion "to clarify" that this expense, or any of the additional amounts that may emerge during discovery of the Titan IV or SLAT or other contracts, comes within the ambit of the complaint, does not break down the total amount, itemize the amounts associated with the LANTIRN program or the other contracts, or describe the particular activities and expenditures under any contract that it alleges qualifies these amounts as QRE eligible for a QRE credit. No documentation of either the original refund claims or the new claims (first raised in the motion to clarify) has been provided to the court, or, according to defendant, to the Service. *See* Oravecz Dec. at 2. (Even the material presented during the audit was not auditable documentation, being summary and descriptive material only. *See* Goldstein Aff. Exhs. A–F; Oravecz Dec. Exh. B.)

### Discussion

■ No suit for a tax refund claim may be maintained unless a refund claim was first submitted to the IRS, I.R.C. § 7422(a), and that claim set forth the grounds upon which the refund was claimed. Treas. Reg. § 301.6402–2(b)(1). *See Ottawa Silica Co. v. United States,* 699 F.2d 1124, 1137–1138 (Fed.Cir.1983). Complying with this rule is a jurisdictional prerequisite. *Boyd v. United States,* 762 F.2d 1369, 1371 (9th Cir.1985) (citing *L.E. Myers Co. v. United States,* 230 Ct.Cl. 142, 673 F.2d 1366, 1367 (1982)).

■ Treas. Reg. § 301.6402–2(b)(1) provides, in pertinent part:

No refund or credit will be allowed after the expiration of the statutory period of limitation ... except upon one or more of the grounds set forth in a [timely] ... claim.... The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.

The statute and regulation establish a rule against "substantial variance" that precludes a taxpayer from "substantially varying" at trial the factual or legal grounds for its claims that were (or should have been) set out in detail in its refund application. *See Ottawa Silica,* 699 F.2d at 1138. *Ottawa Silica,* the principal case on this subject governing this court, described the purposes of the rule as:

[T]o prevent surprise and to give adequate notice to the [Internal Revenue] Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination.... In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend.

*Id.* (quoting *Union Pac. R.R. v. United States,* 182 Ct.Cl. 103, 389 F.2d 437, 442 (1968)). *See also Boyd,* 762 F.2d at 1371–1372 (same).

Plaintiff relies on *National Forge & Ordnance Co. v. United States,* 139 Ct.Cl. 204, 151 F.Supp. 937 (1957) and *Landers, Frary & Clark v. United States,* 137 Ct.Cl. 870, 149 F.Supp. 202 (1957), for the proposition that it was not required to state its claims for refund with any particularity and that its failure to include, in its claims for refund, the research expenses for which it now seeks a tax credit does not preclude it from raising such expenses in this litigation. Plaintiff's reliance is misplaced. *National Forge* and *Landers* merely stand for the proposition that an issue raised in litigation, but not specifically referred to in the refund claim, might be permitted, if the newly raised issue was subsidiary to, or an integral part of, the grounds presented in the refund claim such that the omitted issue must have necessarily been considered by the IRS in its review of the refund claim. *See Union Pac.,* 389 F.2d at 442–443; *National Forge,* 151 F.Supp. at 941 (issue of proper computation of plaintiff's excess profits taxes was necessarily considered by Commissioner in considering plaintiff's claim seeking a refund based on its net operating loss deduction); *Landers,* 149 F.Supp. at 205–206 (excess profits taxes, omitted from claim seeking refund based on net operating loss, were necessarily considered by Commissioner in computing the operating loss).

*Standard Lime & Cement Co. v. United States,* 165 Ct.Cl. 180, 329 F.2d 939 (1964), *Midvale Co. v. United States,* 133 Ct.Cl. 881, 138 F.Supp. 269 (1956), and *Edde v. United States,* 217 Ct.Cl. 690 (Ct.Cl.1978), cited by plaintiff, also do not support plaintiff's assertion that it was not required to state its refund claims with particularity. In *Standard Lime,* plaintiff changed neither the legal grounds nor the factual basis of its claim but merely elected, pursuant to newly-enacted legislation, to compute the amount of its depletion allowance in accordance with such legislation. 329 F.2d at 942.[3] The *Midvale* court did not, as plaintiff asserts, hold that the claim for refund in that case would have been adequate had it generally alleged that the excess profits tax payable was erroneously determined; instead the court held that the taxpayer's rather specific statement of the legal grounds for its claim, "along with the detail furnished in the claims for refund," was sufficient to support the refund suit in that case. 138 F.Supp. at 271. In *Edde,* the court held that plaintiff's reliance, in its refund suit, on § 165 as well as § 166 did not

---

**3.** The court in *Standard Lime* also noted that, even if the taxpayer's election constituted a new and distinct claim for refund, the taxpayer had met the requirements of § 7422(a) because it had timely filed a claim for refund containing its election and the Commissioner had had ample opportunity to consider the taxpayer's claim and avoid needless litigation. *Id.* at 943. The plaintiff in this case did not and cannot file a timely claim for refund with respect to the additional expenditures.

constitute an impermissible variance of the grounds for refund, because the wording of the refund claim, which straddled both statutory provisions referring specifically to neither, put the Commissioner on notice that plaintiff might rely on either statutory provision, and the factual basis of the claim had not changed. 217 Ct. Cl. at 692–693.

Plaintiff argues that the legal grounds ("theory of recovery") of its refund claims apply to the newly-discovered expenses as easily as they do to the expenses referenced in the refund claims (or detailed in the so-called Green Books submitted to the IRS after the claims were filed); that adding these expenses would not affect the (legal) outcome, but only the total amount of the refund claims; and, therefore, that excluding these expenses would do nothing to advance the purpose of the variance doctrine.

The court disagrees. Although many cases have found substantial variance based on a different legal theory argued to the court, the language of § 301.6402–2(b)(1) and the objective behind the substantial variance rule also prevent taxpayers from substantially varying the *factual bases* of their claims as presented to the Service in their refund claims. *Cook v. United States*, 220 Ct.Cl. 76, 599 F.2d 400, 406 (1979). *See also Ottawa Silica*, 699 F.2d at 1138 (substantial variance rule bars variance in the "factual bases" of the taxpayer's legal arguments and not merely in the arguments themselves).

In *Ottawa Silica*, the plaintiff filed a refund claim asserting that the IRS had used improper depletion rates in determining its allowable depletion deduction. In the subsequent refund suit, plaintiff discovered that it had made an error in calculating the gross income to which the depletion rate was applied in determining the allowable depletion deduction. 699 F.2d at 1136–1137. Like the plaintiff in this case, the plaintiff in *Ottawa Silica* argued that there was no substantial variance, because its refund claim had established its *right* to recover on the depletion deduction and the error affected only the *amount* of recovery. *Id.* at 1139. The *Ottawa Silica* court rejected this argument, concluding that the error provided a different factual basis for relief and was not "a subsid-

iary of or integral to" the depletion rate issue raised in the refund claim. *Id.* at 1139.

*Burlington N. Inc. v. United States*, 231 Ct.Cl. 222, 684 F.2d 866 (1982), cited by plaintiff, does not require a different result. In *Burlington*, plaintiff's claim for refund sought a reasonable allowance for the depreciation of certain railroad assets. *Id.* at 867. The factual basis for the claim was that the assets in question had a finite useful life due to anticipated obsolescence. *Id.* at 869. The Commissioner denied the deduction on the basis that plaintiff had failed to establish that the assets had an estimated useful life. *Id.* at 870. During the subsequent refund litigation, plaintiff sought to introduce evidence of past retirement experience with respect to those types of assets in order to establish the assets' useful life. *Id.* at 867. The *Burlington* court held that the plaintiff's evidence did not constitute an impermissible variance of the factual basis of the refund claim but merely constituted an accepted method of proving such factual basis. *Id.* at 869–870. Plaintiff here is not merely seeking to offer additional evidence of the same research expenditures for which it sought a QRE tax credit in its refund claims and thus *Burlington* does not support plaintiff's attempt to add new research expenditures not raised in its refund claims.

*Red River Lumber Co. v. United States*, 134 Ct.Cl. 444, 139 F.Supp. 148, 149–50 (1956), relied upon by plaintiffs in this case as well as in *Ottawa Silica*, was distinguished in the latter case because the figure allowed to be changed—the sales price—was a figure integral to the issue raised by the refund claim, namely the determination of the amount of gain on the sold property. 699 F.2d at 1139. As the *Ottawa* court indicated, merely because the new ground for refund changes the total refund amount does not signify that there was no impermissible variance, since "any separate ground for a refund necessarily affects the amount a litigant may be entitled to recover." *Id.* The crux of the matter is whether the new ground "constitutes a separate ground upon which plaintiff might have sought a refund had it been timely discovered." *Id.*

Clearly, in this case, the newly discovered qualified research expenditures could have been separately raised, as sole or independent claims for refunds, and are not factually "integral to nor subsidiary of" plaintiff's timely refund claims. In *Charter Co. v. United States*, 971 F.2d 1576, 1577 (11th Cir.1992), plaintiff purchased a business, the main asset of which was an oil refinery. The IRS determined that plaintiff had overvalued (and thus allocated too much of the purchase price to) the refinery, and plaintiff filed claims for refund on the grounds that the IRS's reallocation of the purchase price increased the amount allocated to three other assets included in the purchase, thus reducing the income plaintiff realized when it sold those assets. In its refund suit, plaintiff additionally sought a refund relating to the sale of the marketing assets included in the purchase, which were not mentioned in the refund claims, but which were also affected by the reallocation argument. *Id.* at 1577–1578. The court held that a refund for the additional assets was barred by the variance doctrine. *Id.* at 1579–1580.

 Thus, expenditures that are omitted from a refund claim may not be asserted in the subsequent litigation, even if their inclusion in the claim would not have changed the "legal outcome" of the original claim (its allowance or no). *Accord Armstrong Rubber Co. v. United States*, 207 Ct. Cl. 1023, 1023–24 (Ct.Cl.1975); *see also Boyd*, 762 F.2d at 1370–72 (taxpayer sought refund after IRS determined that his poker losses were nondeductible gambling losses rather than business expenses; refund claim did not mention taxpayer's tips to dealers and share of house take-off on each hand, but taxpayer sought to include those expenses in his refund suit; court held additional expense categories barred by variance doctrine). Had the additional expenditures been presented in the claims, the IRS may have put forth additional reasons for denying any credit for them, or may have chosen to look further into the basis for these claims; the law requires that the Service receive this opportunity within a statutory period of time before suit is filed, in order that, for example, necessary evidence is not lost. *See Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314,

65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (purpose of statutes of limitation is to prevent stale claims and to protect defendants from having to defend a claim after memories have faded, witnesses have disappeared and evidence has been lost).

This is not a case, like several cited by plaintiff, where the legal and factual bases asserted in the suit had been identified in the claim, but only the amount claimed had been misstated. *See, e.g., First Nat'l Bank & Trust Co. v. United States*, 329 F.Supp. 1147, 1149 (W.D.Okla.1971) (where plaintiff filed a claim for refund based on a loss deduction arising from the demolition of a building, but was mistaken regarding the value to be assigned to the demolished building, the change revised only the amount, not the legal grounds or the factual bases (the identity of the building, for example) for the refund), *aff'd on other grounds*, 462 F.2d 908 (10th Cir.1972); *Anderson v. United States*, 468 F.Supp. 1085 (D.Minn.1979), *aff'd*, 624 F.2d 1109 (8th Cir.1980). Nor is this a case like *Pink v. United States*, 105 F.2d 183, 187 (2d Cir.1939) or *Addressograph–Multigraph Corp. v. United States*, 112 Ct.Cl. 201, 78 F.Supp. 111, 122–123 (1948) where the facts alleged in the suit in support of a larger refund amount necessarily would have been discovered by the IRS in any investigation of the original refund claim.

In *Anderson*, plaintiff sought a refund on the basis that the amounts he had received in return for releasing a right of first refusal to a franchise were capital gains, not ordinary income. 468 F.Supp. at 1090. Plaintiff's claim for refund included a recitation of the release (establishing the amounts, a lump-sum payment, and a commission to be received for the release) and stated that the funds should have been reported as capital gains, but it erroneously stated that the amount that should have been reported as capital gains was $100,000, an amount that did not include the commission. *Id.* at 1090–1091. The *Anderson* court concluded that the claim contained all the factual and legal grounds of the refund suit and that the only factual element that was enlarged was the total amount of the receipts under the release agreement. *Id.* at 1091. This case

would have been similar to *Anderson* only if plaintiff had provided the IRS with details of the additional expenditures during the audit of its refund claims, but had erroneously failed to include the amount of such expenditures in its statement of the total QRE tax credit being sought. Since plaintiff admits such expenditures were not known at the time, they necessarily were not included, in any amount.

■ When the only factor that is changed is the amount and the factual and legal grounds remain the same, the scope of the litigation is not expanded beyond the factual and legal grounds that the IRS was able to review during its administrative review of the refund claim. *See Ottawa Silica*, 699 F.2d at 1139 (distinguishing *Red River Lumber* on such grounds). Here the IRS had no notice that plaintiff would be seeking a QRE tax credit with respect to the additional LAN-TIRN test unit program expenditures and therefore was not able to review those expenditures during its review of the refund claims. That it did not choose to review the expenditures provided during the audit, or any others, in great depth, or at all, is immaterial. The statute and the regulation clearly require that the IRS be given the chance.

■ Defendant correctly argues that it is not bound by the statements in the RAR that concluded that plaintiff would be entitled to an additional credit of $49.5 million if it prevailed on the funding and substantial rights issues. A revenue agent in preparing a RAR has no authority to bind the government and a RAR is not entitled to any presumption of correctness, absent some final action by the Commissioner speaking to the validity of the RAR. *See Garity v. United States*, 81–2 U.S.T.C. (CCH) P 9599, 1980 WL 1765 (E.D.Mich.1980) ("opinions, impressions, conclusions and reasoning of IRS agents are irrelevant to the validity of the assessment"); *Diebold, Inc. v. United States*, 16 Cl.Ct. 193, 210 (Cl.Ct.) ("a revenue agent's initial position, taken prior to final action on a refund claim, does not bind the Commissioner"), *aff'd*, 891 F.2d 1579 (Fed.Cir.1989).

■ Nor does the fact that defendant in fact raised only certain objections to the expenses presented during its review of the refund claims prevent defendant from arguing that it should have been provided with the opportunity to raise additional objections to the additional expenses by their timely assertion in a refund claim. In a refund suit, the taxpayer has the burden of proving not only that it overpaid its taxes but also the amount of its overpayment. *See King v. United States*, 641 F.2d 253, 259 (5th Cir. 1981) (citing *Lewis v. Reynolds*, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932)) (in tax refund suit, plaintiff had burden of proof on all issues even where government asserts new theory during litigation for defending its tax assessment). Plaintiff therefore must prove that it is entitled to a QRE tax credit for each of the expenditures raised in its refund claims and cannot prevail if any relevant statutory or regulatory provisions, or relevant case law, would not permit a QRE tax credit under the circumstances. Defendant therefore is entitled to raise any objections that would tend to show that plaintiff has failed to meet this burden of proof with respect to some or all of the expenditures in question, even if the asserted grounds are different from those asserted during the administrative review.[4]

For the reasons stated above, plaintiff's motion for an order clarifying the scope of the complaint, deemed a motion to amend the complaint, is denied. Plaintiff's discovery of a $5.4 million error in defendant's favor does not alter the applicable legal standard, because plaintiff's inability to meet its burden

4. In fact, the government may even assert, as an offset against a tax refund claim, an underpayment of tax with respect to items on the taxpayer's return other than those that were the subject of the refund claim. *See Fisher v. United States*, 80 F.3d 1576, 1579 (C.A.Fed.Ct.1996); *Lewis*, 284 U.S. at 283, 52 S.Ct. at 146. That is because a refund suit is in the nature of an action for money had and received and, in order to prevail, the taxpayer must show that it actually overpaid its taxes. *Id*. Under such circumstances, not present in this case, the taxpayer would be permitted to raise additional claims to offset the government's offset. *See St. Louis–San Francisco Ry. Co. v. United States*, 200 Ct.Cl. 50, 470 F.2d 523, 525 (1972); *Charter*, 971 F.2d at 1581. In this case, however, defendant is not seeking an offset but is merely challenging plaintiff's entitlement to those tax credits that were the subject of the refund claims.

of proof on certain expenditures raised in its refund claims does not entitle it to raise otherwise-barred additional expenditures not included in such refund claims.

On July 25, 1997, the parties filed their Joint Status Report and Joint Motion for Amendment of Scheduling Order. The motion is granted. The court's April 3, 1997 scheduling order is amended to provide as follows:

(1) The parties' stipulations based on extrapolations of the court's rulings shall be filed on or before August 19, 1997.

(2) Stipulations of fact relating to the "Service Contract" and "Substantial Rights" issues shall be filed by August 29, 1997. Any follow-up discovery on these issues shall be completed by September 30, 1997. Summary judgment motions on these issues shall be filed by October 15, 1997, with subsequent briefing to be conducted in accordance with RCFC 83.2. This schedule also will govern presentation of the "Commercial Contracts" issue if it is presented to the court at that time.

(3) Stipulations of fact relating to the "Subcontracts" issue shall be filed by October 30, 1997. Any follow-up discovery on this issue shall be completed by December 15, 1997. Summary judgment motions on this issue shall be filed by January 15, 1998, with subsequent briefing to be in accordance with RCFC 83.2.

(4) A joint status report on the development of the other issues, "Deferred Issues," shall be filed 30 days after the filing of the opening brief on the "Service Contracts" or "Substantial Rights" issues.