**NATIONAL FORGE & ORDNANCE COMPANY**

v.

**The UNITED STATES.**

**No. 132–56.**

United States Court of Claims.
May 8, 1957.

On Motion for Reconsideration
July 12, 1957.

938

Scott P. Crampton, Washington, D. C., for plaintiff. D. F. Prince and Dwight Taylor, Washington, D. C., were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen., Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This is an action to recover income and excess profits taxes paid for the fiscal year ending July 31, 1945.

In the fiscal year ending in 1946 the taxpayer sustained a net operating loss. Under the statute, it is permitted to carry back this net operating loss to reduce the income, first, of the second preceding taxable year, and, second, to the immediately preceding taxable year, etc. After the net operating loss has been applied against the income for the second preceding taxable year, the excess is then applied to the immediately preceding taxable year. Hence, in order to determine the amount the taxpayer is entitled to deduct from its income for the fiscal year ending in 1945, it is necessary to determine the amount by which the net loss carryback exceeds the net income for 1944,[1] if any.

1. In 1944 plaintiff had income derived in part from Government contracts. These contracts were renegotiated, and the amount of the excessive profits realized therefrom was settled in the year 1945. Plaintiff, however, deducted the amount of the excessive profits from its income for 1944, pursuant to a ruling of the Internal Revenue Bureau. (I.T. 3611; 1943 Cum.Bull. 978.) The propriety of the deduction of them in 1944 is the first question presented.

On October 21, 1942 Congress amended the 1939 Internal Revenue Code by adding section 3806, 26 U.S.C.A. § 3806, which in subsection (a) (1) provided that the contract price on Government contracts received or accrued in a taxable year should be reduced by the amount of excessive profits determined on renegotiation, whether the determination was made in the taxable year or not. In subsection (a) (3) it was provided that the amount of excessive profits repaid should not constitute a deduction in the year in which repaid or incurred.

Following the enactment of this section, the Bureau of Internal Revenue received an inquiry about the proper application of it in the computation of taxes for the year in which the contract price had accrued and for the year in which the excessive profits were repaid. In reply the Bureau issued I.T. 3611, *supra*. It permits a taxpayer on his return to report the amount of his income accrued on Government contracts within the year, reduced by the amount of excessive profits thereon, although determined in a later year, provided the taxpayer had not already filed his return and paid the taxes shown to be due thereon. This taxpayer had not filed its return, due to an extension of time for its filing, and, hence, it reported in 1944 the amount accrued under the Government contracts in that year, less the amount of excessive profits determined in the following year.

The statute (section 3806) did not give a taxpayer permission to file his return

1. We shall speak of the fiscal year ending in 1944 as the 1944 taxable year, and, similarly, the fiscal years ending in 1945 and 1946.

on this basis. In the preparation of his return a taxpayer was required to report the full amount accrued under his Government contracts within the taxable year, although negotiations were pending on whether or not these profits had been excessive. This was because of the long standing rule, reaffirmed in United States v. Olympic Radio and Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024, and Lewyt Corp. v. Commissioner, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029, that in determining the amount accrued in a taxable year, you do not take into account events happening after the close of the taxable year. The statute only required the Commissioner, in auditing a taxpayer's returns, to adjust its income in accordance with it. Under it, also, the taxpayer, who had reported on his return the entire income from renegotiated contracts, is permitted to file a claim for refund, based upon the reduction of his income by the excessive profits received by him and repaid.

But, the statute did not mention the presumably rare case where the determination that excessive profits had been received was made before the taxpayer had filed his return. In such case, to save the taxpayer from filing his return and paying the tax and then filing a claim for refund, I.T. 3611 permitted him to return his income from Government contracts within the taxable year, reduced by the amount of the repayment to be made in the subsequent year.

This is the ultimate result which section 3806 required, and I.T. 3611 merely permitted the taxpayer to do in the beginning that which would ultimately be done.

It was a departure from the principle of accruals on an annual basis, but it was a departure dictated by Congress.

At all events, it seems to have been well within the law for the taxpayer to have accrued in 1944 only the amount received on Government contracts, reduced by the amount it had to repay.

As stated, the Lewyt case, supra, reaffirmed the principle of accruals on an annual basis, without taking into account events subsequently transpiring; but the Court in this case was not concerned with the proper application of section 3806 and I.T. 3611. The statute and the ruling make an exception to the annual accounting principle. Taxpayer's income for 1944 should be computed accordingly.

■ 2. The next question which the case presents is the proper computation of the excess profits tax for 1944, which section 122(a), (b) and (d) (6), 26 U.S. C.A. § 122(a, b), (d) (6), say must be deducted from the income of the second preceding taxable year before application of the net operating loss carry-back.

The Lewyt case says it must be computed on the income accrued within the taxable year. It is not necessarily the amount shown on the return, the court says, for items may not have been properly accrued. But the court said with equal clarity that events transpiring after the close of the taxable year were not to be taken into account. However, we must conclude that this means, "except those required by statute or valid regulation to be taken into account." I.T. 3611 is a reasonable application of the statute, and we are, therefore, obliged to take it and the statute into account.

We hold, therefore, that in computing the excess-profits tax to be deducted from 1944 income, in order to determine the amount of the net loss for 1946 to be applied against it, we must compute it on its income accrued within the year, as extended by section 3806 and I.T. 3611.

After the deduction of these excess profits taxes, the net operating loss is to be applied against the remainder. If it exceeds the remainder, the excess is to be applied against 1945 net income.

We think this is in accord with the holding of the Olympic Radio and Television, Inc., and Lewyt Corp., cases, supra.

Plaintiff's 1945 net income must be computed on this basis.

■ 3. Defendant says that that part of the excess-profits taxes for 1944

which were later refunded should be taxed in the year refunded or refundable, on the theory that the taxpayer received a tax benefit from the deduction of them from its 1944 net income. However, it concedes that this refund is not taxable unless it reduced the net income of the year in which they were deducted, and that section 23(c), 26 U.S.C.A. § 23(c), provides that excess profits taxes are not deductible in computing net income. But, the defendant says, plaintiff received a tax benefit for 1945 by the deduction of the 1944 excess profits tax from the income for that year, because, except for this deduction, all of the net loss would have been applied against 1944 income, leaving nothing to be applied against 1945 income.

The difficulty with this is that Congress has directed that, only for the purpose of determining the part of the loss to be deducted from the second preceding taxable year, excess profits taxes for that year must be deducted, and it says nothing about including the amount deducted in the income of a subsequent year.

In a sense, the excess profits tax was deducted from net income for 1944, but its deduction did not reduce plaintiff's tax liability for that year, and this is necessary to constitute a tax benefit within section 22(b) (12), 26 U.S.C.A. § 22(b) (12). It was deducted only for the purpose of determining how much of the net operating loss was to be applied against 1944 income and how much against 1945 income.

The intention of the Act, allowing a deduction of a net operating loss, was to spread the loss over a period of as much as four years. It had in mind the fluctuations in a taxpayer's income, and the equity of taking into consideration his income over a five-year period, instead of an annual period. If in four of the five years the taxpayer made money and paid taxes on his profits, and in one year he lost money, provision was made for him to deduct this loss from the income, not of one year only, but of

as many as four other years. If in the first year the taxpayer had realized large gains, the entire loss might be absorbed in that year, instead of spreading it over four years of gain. To prevent all of it from being absorbed in the first year in which it was deductible, the statute provided for the deduction from the income for that year of the excess profits tax accrued on it. This was the only purpose of the deduction of excess profits taxes.

So considered, it is evident that the taxpayer has received no tax benefit, not intended by Congress, from reducing its income for 1944 by the amount of the excess profits taxes accrued with respect to it.

In Lewyt Corp. v. United States, 349 U.S. at pages 239–340, 75 S.Ct. at page 739, supra, the Court assumed that under the facts of that case the taxpayer might receive a tax benefit, but it nevertheless said:

"The taxpayer, however, contends that the excess profits tax 'accrued' in 1944 is the tax shown on its return for that year, viz., $625,-561.59. If this larger amount is the correct figure, then the deduction allowed against 1944 income will be so great as to leave a carry-back which can be deducted against 1945 income.

"The controversy turns on the meaning of the clause in § 122(d) (6) which reads, 'the amount of tax imposed by Subchapter E of Chapter 2 * * * accrued within the taxable year * * *.' The Commissioner contends that the tax 'imposed' is the tax ultimately determined to be due. The argument is that the taxpayer having once got back, through credit or refund, the difference between the amount of the tax 'accrued' in 1944 and the amount finally determined to be due, no double benefit should be inferred. The double benefit, it is argued, should certainly be denied when the figure upon which it is based has no economic reality.

"But the rule that general equitable considerations do not control the measure of deductions or tax benefits cuts both ways. It is as applicable to the Government as to the taxpayer. Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. But where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall. See Bullen v. Wisconsin, 240 U.S. 625, 630, 36 S.Ct. 473, 60 L.Ed. 830."

Whether or not plaintiff received a tax benefit, in that a larger part of the net operating loss is to be deducted from 1945 income than would have been deducted had not the excess profits tax for 1944 been deducted from the income of that year, in determing the amount of the net operating loss to be deducted from 1944 income,—whether or not this is so, the refund of excess profits taxes for 1944, or any part thereof, is not to be included in income in the year refunded or refundable.

Plaintiff is entitled to recover. Judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c).

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.

### On Defendant's Motion for Reconsideration.

Defendant in its motion says we failed to pass on its defense of the inadequacy of the claim for refund as a predicate for its present suit. We noted this defense but we overlooked mentioning it, because we thought it was clearly without merit.

Now that we have been asked to pass on it, we take the occasion to make a few brief comments on this defense in general.

■ Attorneys for the Government frequently ask us to apply to claims for refund a requirement of particularity almost as strict as is customarily applied to indictments for crime.[1] The rule of *strictissimi juris* is not appplicable to claims for refund. All that is required of them, as a predicate for suit in this court is that they put the Commissioner of Internal Revenue on notice of the ground of the taxpayer's claim that his taxes were erroneously computed. This does not have to be stated with any greater particularity than is necessary to draw the Commissioner's attention to the claim he makes in his subsequent suit.

Here the taxpayer claimed its taxes had been erroneously assessed because "of failure to allow the proper net operating loss deduction." This made it necessary for the Commissioner to determine "the proper net operating loss deduction." In making this determination he was obliged to consider the amount by which the 1946 loss exceeded the net income for 1944, in order to determine what taxpayer was entitled to apply against its 1945 net income. This and the proper computation of excess profits taxes for 1944, which also was necessary in computing the "proper net operating loss deduction," were the questions presented by plaintiff's petition in this court.

■ We think the claim for refund was sufficient to cause the Commissioner to consider the matters which are the basis of the present suit. See Landers, Frary & Clark v. United States, Ct.Cl., 149 F.Supp. 202.

1. We intend no criticism of Government counsel in this case. The Court has long admired her for her legal acumen, her fidelity to her client, and her candor in the presentation of her cases.

Defendant's motion for reconsideration is denied.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.