**John A. GREEN, Receiver for the Great Global Assurance Company, in Liquidation, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 96–169T.

United States Court of Federal Claims.

Sept. 29, 1998.

Douglas J. Schmidt, Blackwell Sander Matheny Weary & Lombardi, Kansas City, Missouri, attorney of record, for plaintiff.

Mary M. Abate, Tax Division, United States Department of Justice, Court of Federal Claims Section, Washington, D.C., with whom was Mildred L. Seidman, Chief, Court of Federal Claims Section, attorneys of record, for defendant.

## OPINION

HORN, Judge.

The above-captioned case comes before the court on the defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC). This case arises out of a dispute concerning a tax refund allegedly owed by the United States to the Great Global Assurance Company (Great Global).

The plaintiff, John A. Green,[1] Receiver for the Great Global Assurance Company, a life

---

1. Originally, the Receiver for Great Global was Chris Herstam. The position of Receiver is allocated to the Director of the Arizona Department of Insurance. Accordingly, because the person in this position has changed, so has the party acting as Receiver for Great Global. As of this

insurance company, alleges that the defendant, the United States, acting through the Department of the Treasury, Internal Revenue Service (IRS), erroneously withheld a tax refund due to Great Global. The plaintiff seeks relief in the amount of $699,849.00, plus interest, costs, attorney's fees, and such other costs as the court deems proper. The defendant moves to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4). After careful consideration of the record, the filings submitted by the parties, and the relevant law, this court grants the defendant's motion to dismiss based upon RCFC 12(b)(1) because this court does not possess subject matter jurisdiction.

## BACKGROUND

Prior to 1959, life insurance companies were taxed only on that portion of their investment income which was in excess of the funds reserved to satisfy their obligations to policyholders. In 1959, Congress enacted tax legislation applicable to life insurance companies which attempted to measure the total income of a life insurance company rather than just its investment income. Due to the difficulties in calculating the true annual income of a life insurance company, the Life Insurance Company Income Tax Act of 1959 (the 1959 Tax Act), Pub.L. No. 86–169, 73 Stat. 112 (codified as amended at 26 U.S.C. 801–20), introduced a three-phase procedure for taxing life insurance companies.[2] The 1959 Tax Act allowed insurance companies to shelter a portion of their income in order to enable insurers to build sufficient reserves. This tax sheltered money was to be placed in a "policyholders surplus account" designed to contain enough money to satisfy the insurance company's obligations to policyholders.

The income taxed under phase 1 of the three-phase tax procedure includes "the portion of the net income from interest, dividends, rents, royalties, and other investment sources which is in excess of the amount required as interest additions to reserves or as interest paid." H.R.Rep. No. 34, 86th Cong., 1st Sess. 15 (1959), 1959–2 C.B. 736, 741.

The phase 2 portion of the tax base is calculated at fifty percent of the excess of total net income from all sources over the taxable investment income. This is referred to as an underwriting gain and represents "mortality and loading savings, or saving resulting from longer life expectancies than assumed in establishing premiums and reserves, and also savings from reductions in expenses of servicing policies and expenses incurred in 'putting policies on the books.'" *Id.* That fifty percent untaxed portion of the underwriting gain is placed in a policyholders surplus account.

The phase 3 portion of the tax base was designed to assure that amounts previously deferred under phase 2 were added to the tax base, and, therefore, subject to taxation when they were no longer used to comply with the insurance company's obligations to policyholders. The phase 3 tax "is designed to give assurance that underwriting gains made available to shareholders will be subject to the full payment of tax. Thus, this phase is concerned with the half of underwriting income which under phase 2 is not added to the tax base." *Id.* The phase 3 tax liability for that amount of money, which life insurance companies previously excluded from the tax base, is triggered by one of several events, including the failure of an insurance company to qualify for two successive years as a "life insurance company" pursuant to the statutory definition included in

---

date, the case is captioned in the name of the current Receiver, John A. Green.

**2.** The Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 494, further changed the way life insurance companies were taxed. Division A of the Deficit Reduction Act is known as the Tax Reform Act of 1984, which, at section 211, 98

Stat. 720, addressed the taxation of life insurance companies (codified at 26 U.S.C. § 801 *et seq.*). However, 26 U.S.C. § 815(f) (1982 & Supp. III 1985) directs that the previous version of the code be applied to policyholders surplus accounts for which there was a balance as of December 31, 1983.

26 U.S.C. § 801(a) (1982). 26 U.S.C. § 815(d)(2)(A)(ii) (1982).[3]

## FACTS

The plaintiff, Great Global Assurance Company, has its principal place of business in Scottsdale, Arizona. Great Global requested an extension of time until September 17, 1984 to file its return. Along with the request for an extension, Great Global requested a refund of $35,000.00 it already had paid in taxes. Great Global filed a federal Life Insurance Company Income Tax Return for tax year 1983 on September 17, 1984. On the tax return, Great Global reflected zero tax liability for tax year 1983.[4] The government refunded the $35,000.00 on October 22, 1984.

During the following two tax years, 1984 and 1985, Great Global failed to qualify as an insurance company.[5] Therefore, Great Global became liable to the IRS for taxes on the money in the policyholders surplus account, and was required to add the amount remaining in the policyholders surplus account to its taxable income for the last preceding tax year in which it had qualified as an insurance company. In this case, Great Global had qualified as an insurance company in tax year 1983, but had not qualified in 1984 or 1985.[6] As a result, Great Global filed an amended return for tax year 1983, which included in the tax base the funds in the policyholders surplus account.

The Maricopa County Superior Court of Arizona ruled on February 7, 1986 that Great Global was insolvent, placed the company in receivership and appointed the Director of the Arizona Department of Insurance as the Receiver. Subsequently, the Receiver's efforts to rehabilitate Great Global failed. Thereafter, the Maricopa County, Arizona Superior Court directed the Receiver to liquidate any remaining assets of Great Global.

The Receiver filed an amended return on behalf of Great Global and paid $699,849.00 to the IRS on July 9, 1990. The amount paid consisted of $357,392.00 in revised tax liability and interest thereon of $342,457.00. This increased tax liability resulted from the addition of $820,961.00 to Great Global's 1983 income base. Approximately three months later, on September 24, 1990, the IRS assessed the additional tax and interest on Great Global pursuant to 26 U.S.C. § 6501(c)(6) (1982).[7]

On July 8, 1993, Great Global filed a second amended tax return for the tax year

3. For further descriptions of phases 1, 2, and 3, *see* S.Rep. No. 291, 86th Cong., 1 st Sess., *reprinted in* 1959 U.S.C.C.A.N. 1575–1615.

4. Great Global reported income from operations of $2,770,918.00 and deductions attributable to operations of $2,828,834.00. This net loss caused the calculation of a zero tax liability.

5. Although neither party has indicated the reasons for the failure to qualify, both parties agree that Great Global did not qualify as an insurance company during tax years 1984 and 1985. The qualifications are set out in 26 U.S.C. § 801(a) (1982).

6. The terms of 26 U.S.C. § 815(d)(2)(A) (1982) provide:

> **(2) Termination as life insurance company**
> **(A) Effect of termination**
> Except as provided in section 381(c)(22)(relating to carryovers in certain corporate readjustments), if—
> (i) for any taxable year the taxpayer is not an insurance company, or
> (ii) for any two successive taxable years the taxpayer is not a life insurance company, then the amount taken into account under section

> 802(b)(3) for the last preceding taxable year for which it was a life insurance company shall be increased (after the application of subparagraph (B)) by the amount remaining in its policyholders surplus account at the close of such last preceding taxable year.

7. 26 U.S.C. § 6501(c)(6) was in effect prior to 1984 and is made applicable to the time period at issue by 26 U.S.C. § 815(f). Section 6501(c)(6) stated:

> **(6) Tax resulting from certain distributions or from termination as a life insurance company.** In the case of any tax imposed under section 802(b)(3) on account of a termination of the taxpayer as an insurance company or as a life insurance company to which section 815(d)(2)(A) applies, or on account of a distribution by the taxpayer to which section 815(d)(2)(B) applies, such tax may be assessed within three years after the return was filed (whether or not such return was filed on or after the date prescribed) for the taxable year for which the taxpayer ceases to be an insurance company, the second taxable year for which the taxpayer is not a life insurance company, or the taxable year in which the distribution is actually made, as the case may be.

1983 and requested a refund of the $699,-849.00, including taxes and interest pursuant to 26 U.S.C. § 6402(a) (1982).[8] Great Global stated, as grounds for this refund, that:

1. Under Arizona law for the relevant period, which is binding on Great Global and the IRS because of the McCarran–Ferguson Act, 15 U.S.C. § 1012(b), the Taxpayer's Receivership has insufficient funds to satisfy claims of policyholders, whose priority to payment in the Receivership is senior to the claim of the IRS.
2. No phase 3 tax is .applicable in a receivership where shareholders receive nothing, since such tax "is designed to give assurance that underwriting gains made available to shareholders will be subject to the full payment of tax." H.R.Rep. No. 34, 86th Cong., 1st Sess. 15 (1959), 1959–2 C.B. 736, 741, 742.

The IRS District Director, Mark Cox, responded by letter dated March 1, 1995, and denied the claim for the refund on two counts. The IRS concluded that Great Global had not timely filed the claim for the refund and that even if the claim had been timely, it would have been denied because a partial or complete liquidation of an insurance company is one of the events which triggers phase 3 tax liability pursuant to 26 U.S.C. § 815(d)(2)(A). Thereafter, the taxpayer filed a supplemental claim dated March 7, 1995, and a protest, dated March 23, 1995, which requested that the appeals office consider the claim.

Consequently, IRS appeals officer, George Lawrence, faxed a request to Great Global's attorney for the protest to be resubmitted, and asked the taxpayer to explain Great Global's stance on the timeliness issue. On October 25, 1995, Great Global responded to the IRS and reiterated the taxpayer's position, included in an attachment, that:

The $357,392.00 could not have been reported on Great Global's tax return for 1983, which was filed in 1984 ("1984 Return"), since pursuant to section 815(d)(2)(A) such tax was not determinable until after December 31, 1985. That 1984 Return, therefore, did not and could not set forth sufficient data to calculate the tax here at issue. Thus, the 1990 Return reporting such tax was Great Global's original return with respect thereto.

The appeals office rejected this argument and notified Great Global's counsel by letter, dated January 22, 1996, that Great Global's claim was disallowed on the ground that it was not timely according to the provisions of 26 U.S.C. § 6511(a)(1982). Subsequently, on March 27, 1996, Great Global's counsel filed the above-captioned complaint.

## DISCUSSION

The court considers defendant's motion to dismiss pursuant to RCFC 12(b)(1), for lack of subject matter jurisdiction and pursuant to RCFC 12(b)(4), for failure to state a claim upon which relief can be granted. Defendant contends that this court does not have jurisdiction to consider plaintiff's tax refund claim because the plaintiff filed its tax return for tax year 1983 on September 17, 1984, thus commencing the time from which to calculate the applicable three-year statute of limitations pursuant to 26 U.S.C. § 6511(a) (1982). Thus, according to the defendant, the three-year statute of limitations ended on September 17, 1987. Moreover, according to the defendant, Great Global filed the amended return with the tax payment on July 9, 1990, thus commencing the running of the applicable two-year statute of limitations, pursuant to 26 U.S.C. § 6511(a), which ended on July 9, 1992. Therefore, the defendant argues that the two-year statute of limitations also expired nearly a year before plaintiff filed its claim on July 8, 1993. In addition, defendant contends that this action should be dismissed pursuant to RCFC 12(b)(4) because any allowable refund would necessarily be limited to zero under 26 U.S.C. § 6511(b)(2)(B) (1982).[9]

---

8. 26 U.S.C. § 6402(a) reads:
 (a) **General Rule.**—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person.

9. The provisions of 26 U.S.C. § 6511(b)(2)(B) state: "[i]f the claim was not filed within such 3-year period, the amount of the credit or refund

Plaintiff contends that the 1984 filing for the 1983 tax year could not have triggered the starting date for computation of the statute of limitations because the facts necessary to ascertain the phase 3 tax liability had not been determined at that time and subsequent events necessary to compute the tax had not yet occurred. According to the plaintiff, Great Global did not become liable for the phase 3 tax until January 1, 1986, after it had failed to qualify as a life insurance company for two consecutive years (1984–85). Great Global argues that the July 9, 1990 amended return is the operative return with respect to calculating the statute of limitations on the phase 3 tax in dispute, and, therefore, that the statute of limitations did not expire for three years, or until July 9, 1993, one day after plaintiff filed its claim with the IRS for the tax refund at issue.

■ When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), and/or a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), has been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume

that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Alaska v. United States*, 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491 (1994), as amended 28 U.S.C. § 1491 (Supp.1998), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S.

shall not exceed the portion of the tax paid during the 2 years immediately preceding the

filing of the claim."

535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (*Mitchell I*); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir.1983) (*en banc*), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

▆▆▆ Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (citing *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. 948. "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States*, 17 Cl.Ct. 475, 479 (1989), *aff'd*, 904 F.2d 45 (Fed.Cir.1990) (citations omitted); *see also United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II*) (citing *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States*, 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied*, 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

According to RCFC 12(b)(4), "[a] motion to dismiss for failure to state a claim upon which relief can be granted is appropriate where the plaintiff cannot assert a set of facts which would support its claim." *Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 215 (Fed.Cir.1993), *cert. denied*, 511 U.S.

1106, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994) (citing *Chang v. United States*, 859 F.2d 893, 894 (Fed.Cir.1988)). In determining a motion to dismiss under RCFC 12(b)(4), the court "must 'assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant.' " *Mitchell Arms, Inc. v. United States*, 7 F.3d at 215 (citing *Gould v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)). RCFC 12(b)(4) "mirrors" Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6); *Maniere v. United States*, 31 Fed. Cl. 410, 419 (1994). The court is required to deny a motion pursuant to RCFC 12(b)(4) or Rule 12(b)(6), "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99 (footnote omitted); *see also Maniere v. United States*, 31 Fed.Cl. at 419 (citing *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir.1993)).

▆▆▆ In the case of a civil action for the recovery of a tax refund, this court shall have original jurisdiction pursuant to 28 U.S.C. § 1346(a)(1) (1982). Sovereign immunity is waived in a tax refund case when the claim is "duly filed" with the IRS. 26 U.S.C. § 7422(a) (1982); [10] *United States v. Michel*, 282 U.S. 656, 658, 51 S.Ct. 284, 75 L.Ed. 598 (1931); *see also Hampton v. United States*, 206 Ct.Cl. 422, 436, 513 F.2d 1234, *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); *Sun Chemical Corp. v. United States*, 698 F.2d 1203, 1206 (Fed.Cir.), *cert. denied*, 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 91 (1983). A claim for a tax refund, however, is not duly filed pursuant to 26 U.S.C. § 7422(a) unless it is filed within the time allotted under 26 U.S.C. § 6511(a).[11]

---

10. The provisions of 26 U.S.C. § 7422(a) state:

(a) **No suit prior to filing claim for refund.**-No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for a refund or credit has been duly filed with the Secretary, according to the

provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

11. The provisions of 26 U.S.C. § 6511(a) state:

(a) **Period of limitation on filing claim**
Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2

In the case at bar, Great Global argues that the United States Court of Federal Claims has jurisdiction over their civil action for a tax refund based upon 28 U.S.C. § 1346(a)(1),[12] 26 U.S.C. § 6511 and 26 U.S.C. § 7422(a). Defendant responds, however, that this court does not have jurisdiction over plaintiff's claim pursuant to 26 U.S.C. § 6511(a) because the claim was not timely filed. Therefore, according to the defendant, the court must dismiss plaintiff's lawsuit for lack of subject matter jurisdiction. Plaintiff responds that because the IRS could not have assessed phase 3 taxes on Great Global until after December 31, 1985, the 1983 tax return could not commence the running of the applicable statute of limitations. Plaintiff argues further that the July 9, 1990 tax return was the first document to mention the phase 3 tax, and, that therefore, the filing date of the 1990 amended return should be considered the operative "filing" date with regard to the phase 3 tax.

The conflict between the plaintiff and the defendant revolves around interpretation of the phrase "from the time the return was filed," as used in 26 U.S.C. § 6511(a), and a statutory interpretation of 26 U.S.C. § 815(d)(2)(A) (1982). Such conflict must be resolved in accordance with accepted rules of statutory construction. The United States Court of Appeals for the Federal Circuit has offered guidance on how to approach statutory interpretation, as follows:

> Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction* (4th ed.). First, " ' "[t]he starting point in every case involving construction of a statute is the language itself." ' " *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). Second, where a statute states what a term "means" then all other mean-

ings not stated are excluded. *Colautti v. Franklin*, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States*, 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States*, 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Thus, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Dep't of Commerce*, 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), *reh'g denied*, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). Furthermore, a court should resort to legislative history only if:

> a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan*, 339 U.S. 323, 338, 70 S.Ct.

---

years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. . . .

12. The provisions of 28 U.S.C. § 1346(a)(1) state: (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority, or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purposes of the statute, *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustee[s] of Indiana University v. United States*, 618 F.2d 736, 739, 223 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon*, 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid v. Department of Commerce*, 793 F.2d at 281–82.

 Accepted principles of statutory construction also provide that courts must interpret a statute as a whole. *Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). To this effect, the Supreme Court has written:

On numerous occasions we have noted that " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285, 76 S.Ct. 349, 100 L.Ed. 309 (1956) (in turn quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122, 12 L.Ed. 1009 (1850))).

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). *See* Sutherland Stat. Const. 46.05, 46.06 (5th ed.1992). Courts must " ' "give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937)).

 Furthermore, in construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless or superfluous. *Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th Cir.1991). *See* Sutherland Stat. Const. 46.06 (5th ed.1992). The meaning of statutory language depends on context and a statute should be read as a whole. *Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *King v. Saint Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (Souter, J.) (citing *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19, 26, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988)). "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *King v. Saint Vincent's Hosp.*, 502 U.S. at 221, 112 S.Ct. 570 (quoting *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir.1941) (L. Hand, J.)). Therefore, when reviewing a statute, this court must construe each section in connection with each of the other sections, so as to produce a harmonious whole.

The crux of Great Global's argument is that July 9, 1990 should be considered the operative filing date with respect to calculation of the statute of limitations regarding the phase 3 tax, and, as such, the three-year time limit on filing a claim should not have commenced to run until the filing of the July 9, 1990 amended return. Great Global contends that it could not have determined that it was even liable for phase 3 taxes until after December 31, 1985. This is not disputed, for, as 26 U.S.C. § 815(d)(2)(A)(ii) prescribes, the amount of money in the policyholders surplus account is not added to the plaintiff's taxable income until a life insurance company fails to qualify as an insurance company for two consecutive years. Great Global qualified as a life insurance company for tax year 1983, but did not so qualify for tax years 1984 and 1985. Hence, the earliest possible date that Great Global became liable for the phase 3 tax was following the 1985 tax year. Moreover, the plaintiff asserts that the phase 3 tax has no due date. The plaintiff argues that because the 1990 tax return was the first

return filed on behalf of the plaintiff which could have and did address the phase 3 tax obligation that it should be considered the "original" return for purposes of commencing the start of the running of the three-year statute of limitations. Great Global contends that the purpose of the statute would be frustrated if the court denies the refund claim based on the fact that the July 9, 1990 return is considered an amended return. According to Great Global, applying defendant's interpretation of the statute would lead to the result "that the due date for such a return would occur more than a year prior to the end of 1985 when facts on which to base the return would first be known."

The government's response is that, while 26 U.S.C. § 6511(a) grants three years from the time of the filing of the return or two years from the time the taxes were paid, the plaintiff did not file its claim for refund until nearly three years after the time of payment and nearly ten years after the 1983 filing of the original return with the IRS. The government rejects plaintiff's theory that the July 9, 1990 filing of the amended return is the filing date from which to calculate the three-year statute of limitations in favor of the view that the initial return, the 1983 return, is the applicable filing date from which to commence the running of the three-year statute of limitations.

The issue of whether a particular tax filing constitutes a filing for statute of limitations purposes is not a new one. The language of 26 U.S.C. § 6511(a) indicates that the three-year statute of limitations commences "from the time the return was filed." The statute states:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later....

26 U.S.C. § 6511(a).

■ The commencement date for initiating the running of the statute of limitations has been interpreted by the United States Supreme Court, in *Zellerbach Paper Co. v.*

*Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), to mean that, "[t]he return exacted by the statute, the one that in the absence of fraud is to start the term of limitation ... is the return filed by the taxpayer at the close of the fiscal year, though supplementary information may modify or add to it." *Id.* at 177–78, 55 S.Ct. 127. *See also Badaracco v. Commissioner*, 464 U.S. 386, 393–97, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (and cases cited therein) and *Clifton Mfg. Co. v. United States*, 293 U.S. 186, 186–88, 55 S.Ct. 133, 79 L.Ed. 276 (1934).

■ Statutes of limitations "are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." *Kavanagh v. Noble*, 332 U.S. 535, 539, 68 S.Ct. 235, 92 L.Ed. 150 (1947) (citing *Rosenman v. United States*, 323 U.S. 658, 661, 65 S.Ct. 536, 89 L.Ed. 535 (1945)). As noted above, the statute of limitations time periods set out by 26 U.S.C. § 6511(a) are three years from the time of the filing of the original return or two years from the time of the tax payment, whichever is later.

■ The language of 26 U.S.C. § 815(d)(2)(A) dictates that:

> the amount taken into account under section 802(b)(3) for the last preceding taxable year for which it was a life insurance company shall be increased ... by the amount remaining in its policyholders surplus account at the close of such last preceding taxable year.

26 U.S.C. § 815(d)(2)(A). The plain words of section 815(d)(2)(A) indicate that the phase 3 tax filing to cover the now taxable money in the policyholders surplus account is considered an "increase" to the tax base shown on the earlier filed 1983 return. Consequently, under the statute, an insurance company, such as Great Global, paying taxes pursuant to 26 U.S.C. § 815(d)(2)(A), must submit a recalculated or amended tax return for the last tax year that it qualified as an insurance company (1983). The amended return is based upon the addition to previously reported income of monies in the policyholders surplus accounts, which became taxable because of the failure to qualify as an insurance

company for two successive years (1984–85). The United States Supreme Court, in *Zellerbach Paper Co v. Helvering,* held that "a second return, reporting an additional tax, is an amendment or supplement to a return already upon the files, and being effective by relation does not toll a limitation which has once begun to run." 293 U.S. at 180, 55 S.Ct. 127 (citing *Florsheim Bros. Drygoods Co. v. United States,* 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542 (1930)).

Great Global cites *Haggar v. Helvering,* 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340 (1940), in support of its position. *Haggar v. Helvering* involved a company that had submitted a tax return declaring the value of its entire capital stock at $120,000.00. The company had paid the tax. Before the due date for the tax return, however, the company submitted an amended return which declared the value of the stock to be $250,000.00. The taxpayer then filed its income and excess profits tax return. The Commissioner refused to accept the amended capital stock return and gave notice of a deficiency in the excess profits tax calculated on the original stock value of $120,000.00. *Id.* at 392, 60 S.Ct. 337. The United States Supreme Court held that although there was a clause which stated that the base-year declaration "cannot be amended," to preclude the company from making such an amendment before the due date had arrived would produce a "harsh and incongruous result" in that instance and would frustrate the overall purpose of the statute. *Id.* at 395, 60 S.Ct. 337. The Supreme Court noted:

> All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose. *Hawaii v. Mankichi,* 190 U.S. 197, 23 S.Ct. 787, 47 L.Ed. 1016; *United States v. Katz,* 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986; *Sorrells v. United States,* 287 U.S. 435, 446, 53 S.Ct. 210, 77 L.Ed. 413; *Burnet v. Guggenheim,* 288 U.S. 280, 285, 53 S.Ct. 369, 77 L.Ed. 748; *Armstrong Paint &*

> *Varnish Works v. Nu–Enamel Corp.,* 305 U.S. 315, 332–3, 59 S.Ct. 191, 83 L.Ed. 195. *Id.* at 394, 60 S.Ct. 337.

A "statute normally runs from the fixed date its terms appear to establish." *Kellogg–Citizens Nat'l Bank of Green Bay, Wis. v. United States.,* 330 F.2d 635, 639, 165 Ct.Cl. 452, 459 (1964) (footnote omitted). In the instant case, the plaintiff concedes that the phase 3 tax could have been determined after December 31, 1985. Plaintiff argues that Congress set no time for the payment of a phase 3 tax. However, this does not necessarily mean, as plaintiff concludes, that the tax filing which reflects the recalculation of the taxes due for a particular tax year based on the phase 3 tax should be considered an original return with regard to calculation of the applicable statute of limitations. Indeed, Congress provided an entirely separate and additional two years from the payment of a tax within which to file a tax refund claim. As enacted, the statute provides two statutes of limitations, one the three-year period running from the time of the filling of the original return, and the other the two-year period running from the time of the tax payment. Moreover, 26 U.S.C. § 6511(a) specifically provides that whichever date is later shall apply.

Why Congress chose a two-year period following payment of the taxes owed, as opposed to the three-year period which it chose to apply from the time of the tax return filing, is not articulated. The United States Supreme Court, although under different circumstances than presented in the instant case, stated, "it is not our province to speculate as to why Congress established a shorter period of limitations relative to the income tax. . . ." *Kavanagh v. Noble,* 332 U.S. at 539, 68 S.Ct. 235. In the above-captioned case, Great Global paid the phase 3 tax on July 9, 1990, and, thus, had two years from the time of that payment to claim a refund. The availability to the plaintiff of the two-year statute of limitations from the date of payment avoids the "harsh" result the Supreme Court rejected in *Haggar v. Helvering.* In addition, when the plaintiff understood its phase 3 tax liability, plaintiff still had over twenty months, from January 1,

1986 to September 17, 1987, to file a claim for refund within the applicable three-year statute of limitations.

Great Global's contention that its 1984 tax filing should not have begun the running of the statute of limitations because at that time it did not possess the information needed to assess the phase 3 tax also fails in light of the United States Supreme Court's language included in *Zellerbach Paper Co. v. Helvering:*

> Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such (*Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829), and evinces an honest and genuine endeavor to satisfy the law. This is so though at the time of filing the omission or inaccuracies are such as to make amendment necessary. Even more clearly is it so when the return is full and accurate in the beginning under the statutes then in force, but is made inaccurate or incomplete by supervening changes in the law, unforeseen and unforeseeable.

*Id.* at 180, 55 S.Ct. 127. Nor do supervening changes in circumstance toll the statute of limitations. Furthermore, 26 U.S.C. § 815(d)(2)(A) specifically mandates that the tax liability created by failing to qualify as an insurance company is to be added to the amount taken into account for the last year the company did qualify as an insurance company.[13] Therefore, in the above-captioned case, the phase 3 amended tax return filed in 1990 should be considered as the filing of an addition to or an amendment to the original tax liability indicated on the return filed by Great Global on September 17, 1984 for the 1983 tax year.

The United States Supreme Court held in *United States v. Zacks,* 375 U.S. 59, 70, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963), that the statute of limitations regarding a lawsuit for a tax refund should not be extended unless it is done by the express intent of Congress. Unlike in the instant case, the court's discussion in *United States v. Zacks* revolved

around retroactive tax legislation, rather than changes in circumstances. In following the opinion in *United States v. Zacks,* the court in *Kellogg–Citizens Nat'l Bank of Green Bay, Wis. v. United States,* 330 F.2d 635, 165 Ct.Cl. 452 (1964), held that the United States Supreme Court had:

> (a) neutralized that part of the general theory of our earlier opinions (*Verckler v. United States,* 145 Ct.Cl. 252, 170 F.Supp. 802 (1959); *Zacks v. United States,* [150 Ct.Cl. 814, 280 F.2d 829 (1960) ]; *Eastman Kodak Co. v. United States,* 155 Ct.Cl. 256, 292 F.2d 901 (1961); *Lorenz v. United States,* 155 Ct.Cl. 751, 296 F.2d 746 (1961)) which may have seemed to suggest the extension of the statute of limitations whenever an event reducing a taxpayer's liability occurred after the payment of the tax or the filing of the return; and (b) indicated, at the least, that the normal limitations period in tax cases should continue to be applied unless there are good reasons for thinking that Congress established a new or prolonged period.

*Id.* at 456–57, 330 F.2d 635 (footnote omitted).

When Congress has set a statute of limitation on filing a tax refund claim, it also has the option to carve out any exceptions and extensions to the time limit. It is not the role of the courts to imply additional exceptions or extensions when Congress has not explicitly so articulated. The United States Supreme Court has stated, "[w]hether or not this [extending a statute of limitations] should be done is a matter for Congress to decide. Where Congress has decided otherwise, this Court has but one course." *United States v. Zacks,* 375 U.S. at 70, 84 S.Ct. 178. This court agrees.

The words of the court in *Kellogg–Citizens Nat'l Bank of Green Bay, Wis. v. United States,* "to avert the bar of limitations, plaintiff should have gone as far as it reasonably could to protect its potential right to a refund," 165 Ct.Cl. at 458, 330 F.2d 635, are

---

13. As noted above, the applicable words of 26 U.S.C. § 815(d)(2)(A) state that if a life insurance company fails to qualify as a life insurance company for two consecutive years "then the amount taken into account under section 802(b)(3) *for the* *last preceding taxable year for which it was a life insurance company shall be increased* … by the amount remaining in its policyholders surplus account at the close of such last preceding taxable year." (emphasis added)

instructive in the case at bar. Also as noted in *Kellogg–Citizens* :

> At least where, as here, a substantial part of the usual limitations period remains when the taxpayer learns of the events causing, or likely to cause, a diminution in his liability, he should file a protective refund claim in order to preserve his position. If he fails to do so, he will allow the limitations bar to fall.

*Id.* at 459, 330 F.2d 635. The instant plaintiff had the option to file a protective refund claim, which serves to notify the government of a potential claim, certify the amount in dispute, and fulfill the requirement that a claim be filed within the statutory time limit. *Id.* at 458, 330 F.2d 635 (citing *American Radiator v. United States,* 162 Ct.Cl. 106, 113–116, 318 F.2d 915, 920–21 (1963); *Harlan v. United States,* 160 Ct.Cl. 209, 218, 312 F.2d 402, 408 (1963); *National Forge & Ordnance Co. v. United States,* 139 Ct.Cl. 222, 151 F.Supp. 937 (1957)). According to the court in *Kellogg–Citizens,* protective claims are a recognized part of federal tax practices, and "[s]uccessive claims may be filed, defective claims cured and informal claims turned into formal ones." *Id.* at 458 n. 4, 330 F.2d 635.

In the instant case, Great Global also knew or should have known how to calculate the applicable statutes of limitations and the times it had remaining to file a refund claim with the IRS pursuant to 26 U.S.C. § 6511(a). Therefore, because plaintiff failed to file its claim in time to comply with the applicable statutes of limitations, we need not address the priority of claims in bankruptcy issue raised by the plaintiff.[14]

Plaintiff argues, but has failed to demonstrate, that the instant case is "a case in which the statute of limitations bars recovery

before the right to recover accrues." *Eastman Kodak Co. v. United States,* 155 Ct.Cl. at 267, 292 F.2d 901. Such a situation might arise when the event that triggers the claim occurs after the statute of limitations has passed. This is not such a case.

## CONCLUSION

The court finds that the plaintiff's claim for a tax refund was filed after the applicable statutes of limitations had run. Therefore, the court GRANTS the defendant's motion to dismiss pursuant to RCFC 12(b)(1).[15]

**IT IS SO ORDERED.**

---

**14.** There is nothing in the record before the court to suggest that the facts warranting a claim for tax refund by the Receiver arose only after the two-year statute of limitations had run following the July 9, 1990 tax payment. Moreover, the Receiver should have anticipated the potential for a possible reduction in the tax liability in the event insufficient funds to pay policyholders remained upon liquidation of the bankrupt estate and the Receiver should have filed a protective claim for tax refund prior to the running of the applicable statutes of limitations.

**15.** Defendant's RCFC 1 2(b)(4) argument based on 26 U.S.C. § 6511(b)(2)(B) is not reached inasmuch as the plaintiff's claim is time-barred under 26 U.S.C. § 6511(a). However, since plaintiff paid zero taxes during the two-year period of 26 U.S.C. § 6511(b)(2)(B), as argued by the defendant, according to the statute, plaintiff would be entitled to a refund of zero.